## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DON QUARLES, an individual;<br>on behalf of himself and all others<br>similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 00-CV-0913-CVE-PJC |
| UNITED STATES OF AMERICA,<br>ex rel. BUREAU OF INDIAN AFFAIRS;<br>UNITED STATES OF AMERICA,<br>ex. rel. ENVIRONMENTAL PROTECTION<br>AGENCY; TEXACO, INC.; GETTY OIL<br>CO.; PHILLIPS PETROLEUM COMPANY;<br>SUN OIL CO.; LITTLE RIVER ENERGY<br>CO.;  YARHOLA PRODUCTION CO.;<br>SPESS OIL COMPANY,  INC.; CHAMBERS<br>& HENDRIX OIL & GAS, INC.; and<br>JOHN DOES 1-1000, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is the United States' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. # 50).  This motion to dismiss was reinstated after the United States Court of Appeals for the Tenth Circuit reversed the Court's January 31, 2003 Order (Dkt. # 79).  The January 31, 2003 order dismissed without prejudice Quarles' complaint for failure to exhaust administrative remedies under the Osage Allotment Act of 1906, as amended by Section 2 of the Act of March 2, 1929 (45 Stat. 1478, 1479).

### I.

The Tenth Circuit set forth a concise statement of the case in this manner:

> Don Quarles, an owner and recreational user of property in Osage County, Oklahoma, brought suit against the Bureau of Indian Affairs ("BIA"), the Environmental Protection Agency ("EPA"), and several oil companies ("Oil

Company Defendants") for alleged waste water leaks in 1998 and 1999 from oil production.   Specifically, Quarles claims that the Oil Company Defendants unlawfully released oil, oil products, hazardous substances, and pollutants, damaging his property by causing salt scarring and advanced soil erosion, and contaminating the soil and water with radioactive materials.  The waste water leaks also allegedly migrated or will migrate to Skiatook Lake, the Arkansas River, and other nearby waters, contaminating them.

These alleged releases prompted Quarles to file suit against the Oil Company Defendants, the BIA, and the EPA. Quarles alleges various statutory and common law violations in addition to citizen suit claims under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., the Oil Pollution Act of 1990 (OPA), 33 U.S.C.A. §§ 2702, 2706, and the Clean Water Act (CWA), 33 U.S.C. § 1251, et seq., for loss of enjoyment of natural resources and the BIA and EPA's alleged failure to remediate the pollution. Quarles also brings negligence claims under the Federal Tort Claim Act (FTCA), 28 U.S.C. § 1346(b), asserting that the EPA and BIA violated their nondiscretionary duties to assess natural resource damage to Quarles' and other class members' property, and that the BIA violated the "Indian Trust Doctrine" through its historic failure to administer federal environmental statutes.  In addition, Quarles alleges state and common law nuisance and negligence claims against the Oil Company Defendants.

Quarles v. United States ex rel. Bureau of Indian Affairs, 372 F.3d 1169, 1170-71 (10th Cir. 2004)

(footnotes omitted).

Oil and gas operations in the county have been extensive since the first oil well was drilled

in Osage County in 1896.  The Tenth Circuit ruled that this case does not arise under § 2 of the

Osage Allotment Act, but passage of the Act, as set forth in the opinion, accounts for the unique

character of Osage County and, thus, Quarles' inclusion of the BIA:

Congress passed the Osage Allotment Act ("Act"), 34 Stat. 539, in 1906 in part for the purpose of dividing the land in the Osage Reservation among the members of the Osage Tribe. Coincidentally, the Act established a subsurface mineral estate trust, held by the United States, on behalf of the Osage Tribe. Id. at § 2.7. The Secretary of the Interior is directed to manage oil and gas extraction leases, with the royalties earned from the leases reserved to the Osage Tribe. Id.

<u>Quarles</u>, 372 F.3d at 1172.  Osage County is "Indian country," as defined by 18 U.S.C. § 1151, and falls under the supervision of the BIA.   The Osage Allotment Act essentially severed the surface and mineral interests in Osage County.   Quarles owns a surface estate in Osage County.[1]

Five of the twelve claims alleged by Quarles are against the United States:  counts I-IV and X.  The first claim is for breach of a non-discretionary duty to assess damages and restore natural resources under the OPA, CWA, and CERCLA.   The second claim is for violation of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, 706 in the United States' remediation decisions.  The third claim is for breach of the "Indian Trust Doctrine."  The fourth claim is for breach of a non-discretionary duty to create an administrative record under CERCLA, 42 U.S.C. § 9613.  The tenth claim is for negligence pursuant to the FTCA.  The Court addresses each of these claims below.

## II.

A motion to dismiss is properly granted when it appears beyond doubt that the plaintiff could prove no set of facts entitling him to relief.  <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Ramirez v. Department of Corrections</u>, 222 F.3d 1238, 1240 (10th Cir. 2000).  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court must determine whether the plaintiff can establish that the Court has jurisdiction over the defendant.   For purposes of making this determination, a court must accept all the well-pleaded allegations of the complaint as true and must

---

[1]     The United States' motion to dismiss addresses "Plaintiffs' Amended Complaint," and references the arguments of "plaintiffs" as opposed to those of Quarles alone.  The Amended Complaint lists Quarles and the Osage Environmental Conservation Foundation ("OECF") "on behalf of themselves and all other similarly situated" as plaintiffs. The OECF has since been dismissed, and the Court has not yet ruled on Quarles' motion for class certification. Accordingly, the Court will address his arguments as those asserted by "plaintiff" and not "plaintiffs" as set forth in the parties' briefs.

construe them in the light most favorable to the plaintiff.  Ramirez, 222 F.3d at 1240;  Robbins v. Bureau of Land Mgmt., 252 F. Supp. 2d 1286, 1291 (D. Wyo. 2003) (same standard applies to a motion attacking the complaint on its face under Fed. R. Civ. P. 12(b)(1)).  However, the Court need not accept as true those allegations that are conclusory in nature.  Erikson v. Pawnee County Board of County Commissioners, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted).  "The issue is not whether the plaintiff will ultimately prevail, but whether [he] is entitled to offer evidence to support [his] claims."  Cooper Mfg. Corp. v. Home Indem. Co., 131 F. Supp. 2d 1230, 1232 (N.D. Okla. 2001).

### III.

The United States first challenges the FTCA claim (count X) of the Amended Complaint, apparently because this claim was the basis of the plaintiff's initial complaint before plaintiff amended to add new defendants and new claims.  The government argues that this claim should be dismissed because plaintiff has failed to exhaust his claim administratively, because no duty is alleged, and because specific exceptions to the waiver of sovereign immunity contained in the FTCA apply.   Plaintiff effectively conceded at hearing on August 9, 2005, that he had not exhausted his claim administratively.  The FTCA provides, in relevant part, that

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  Plaintiff argued at the hearing that he did not present his claim because it would have been futile.  The Tenth Circuit has made it clear, however, that alleged futility does not excuse the jurisdictional prerequisite of filing the administrative claim before bringing an FTCA

action.  Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 967 (10th Cir. 1994).  Therefore, plaintiff's FTCA claim (count X) must be dismissed.[2]

## IV.

Plaintiff alleges in count I that the BIA and EPA have breached a non-discretionary duty to assess damages and restore natural resources under the OPA, CWA, and CERCLA.  The United States argues that Count I should be dismissed because (a) plaintiff has not alleged a non-discretionary duty, (b) natural resource damages are not payable to citizens, (c) CERCLA excludes petroleum from its coverage, and (d) EPA is not a natural resources trustee under either the OPA, CWA, or CERCLA.  Each of these arguments is addressed in turn.

### A.    Mandatory or Discretionary Duty

Under the APA, any person "adversely affected or aggrieved" by a agency action, including a "failure to act," is entitled to judicial review of that action as long as the action is "made reviewable by statute" or a "final agency action for which there is no other adequate remedy in a court," unless "statutes preclude judicial review" or the "*agency action is committed to agency discretion by law.*"  See 5 U.S.C. §§ 701-706 (emphasis added).  Courts generally will defer to an agency's construction of the statute which the agency is charged with implementing, and to the procedures that agency adopts for implementing that statute.  An agency's decision not to take enforcement action is presumed immune from judicial review under section 701(a)(2) of the APA.  Heckler v. Chaney, 470 U.S. 821, 832 (1985).  However, such a decision

---

[2]    The United States initially argued that, pursuant to 25 C.F.R. §§ 226.20 and 226.21, plaintiff's claims were barred because he failed to serve notice of surface damages upon the oil and gas lessees who operated on his land in Osage County.  The Tenth Circuit effectively rejected this argument when it held the Osage Allotment Act inapplicable due to plaintiff's failure to raise a claim specifically under section 2 of that act.  Quarles, 372 F. 3d at 1173.

is only presumptively unreviewable; the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers. Thus, in establishing this presumption in the APA, Congress did not set agencies free to disregard legislative direction in the statutory scheme that the agency administers. Congress may limit an agency's exercise of enforcement power if it wishes, either by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue.

Id. at 832-33.

Plaintiff argues that  the CWA, OPA, and CERCLA all establish a non-discretionary duty for the EPA and the BIA, as trustees of natural resources, to assess damages for injury to, destruction of, or loss of natural resources for those resources under their trusteeship. Amended Complaint, Dkt. # 15, at 13, ¶¶ 53, 55 (citing 33 U.S.C. §1321, 33 U.S.C. §§ 2702, 2706(g), and 42 U.S.C. §§ 9607(a)(4)(C) and 9607(f)((2)(A)).  In particular, plaintiff contends that the word "shall" in 33 U.S.C. § 2706 and 42 U.S.C. § 9607(f) imposes mandatory duties on the EPA and BIA to assess such damages.  The Tenth Circuit and other courts, including this Court, have rejected a similar argument in reference to other provisions of the CWA.  See Amigos Bravos v. EPA, 324 F.3d 1166, 1171 (10th Cir. 2003); Sierra Club v. Whitman, 268 F.3d 898, 904 (9th Cir. 2001); Sierra Club v. Train, 557 F.2d 485, 488, 491 (5th Cir. 1977); Martin v. AMVEST Osage, Inc., No. 04-CV-572-CVE-PJC, Dkt. # 108 (N.D. Okla. July 15, 2005).  Plaintiff argues that these cases are inapposite because they do not involve a federal *trustee* with explicit statutory duties.

The relevant provision under the CWA provides that the

President, or the authorized representative of any State, shall act on behalf of the public as trustee of the natural resources to recover for the costs of replacing or restoring such resources.  Sums recovered shall be used to restore, rehabilitate, or acquire the equivalent of such natural resources by the appropriate agencies of the Federal Government, or the State government.

33 U.S.C. §1321(f)(5).  The OPA provides that federal trustees designated under the section "shall assess natural resource damages under section 2702(b)(2)(A) of this title for the natural resources under their trusteeship; . . ." and "shall develop and implement a plan for the restoration, rehabilitation, replacement, or acquisition of the equivalent, of the natural resources under their trusteeship."  33 U.S.C. § 2706(c)(1)(A) and (C).  Under CERCLA, public trustees of natural resources designated by the President in the National Contingency Plan under 42 U.S.C. § 9605 and under 33 U.S.C. § 1321 (the CWA)

> shall assess damages for injury to, destruction of, or loss of natural resources for purposes of this chapter and such section 1321 of Title 33 for those resources under their trusteeship and may upon request of and reimbursement from a State and at the Federal officials' discretion assess damages for those natural resources under the State's trusteeship.

42 U.S.C. § 9607(f)(2)(A).  Here, Congress' use of "shall" and "may" in the same sentence appears to reflect an intent to make a distinction between designating mandatory and discretionary duties.

Neither plaintiff nor the government provides the Court with references to legislative history to assist in the determination as to whether Congress has limited the appropriate agency's exercise of enforcement power under the CWA, OPA, or CERCLA.  The legislative history of these three statutes is extensive, but to the extent that one can find references to the government's role as trustee of natural resources, Congressional intent appears to be that the government has a non-discretionary duty to assess damages where a discharge of oil or hazardous substances has occurred.  The legislative history of the CWA and the OPA is intertwined, as part of the OPA served to amend provisions of the CWA.  When the OPA was considered prior to its passage in 1990, the Senate Report reads as follows:  "As amended, the bill would *require* trustees to act on behalf of the public

to assess and to recover for damage to natural resources."  S. Rep. No. 101-94, at 15 (1989),

reprinted in 1990 U.S.C.C.A.N. 722, 736 (emphasis added).

The Conference Committee Report, from which the bill passed, speaks in terms of the

trustees' "responsibility" to assess natural resource damages "and to develop and implement

restoration plans." H.R. Conf. Rep. No. 101-653 at 107-08 (1990), reprinted in 1990 U.S.C.C.A.N.

779, 785-86.  It further explains:

> Thus, in addition to providing remedies for removal costs and for economic damages
> suffered by private parties, the legislation *requires* trustees to act on behalf of the
> public to assess natural resource damages, prepare and implement a plan for
> repairing the injury done to the environment, and to seek compensation from the
> responsible party.

Id. at 108 (emphasis added).  The Conference Report recognizes that "[t]here may be instances

where two or more trustees share jurisdiction or control over natural resources.  In such cases,

trustees should exercise joint management or control of the shared resources." Id.   Perhaps most

tellingly, it states:

> Subsection (g) provides that a person may seek review in the Federal district courts
> of the actions of any Federal official who is alleged to have failed to perform a
> *non-discretionary duty* under section 1006 of the substitute (dealing with the rights
> and responsibilities of natural resource trustees). The Conferees do not intend that
> this provision expand or diminish rights existing under current law.

Id. at109-10.[3]

---

[3]     The OPA was enacted in the wake of the Exxon Valdez oil spill in Alaska and other oil spills
in coastal waters and lakes much larger than the Skiatook Lake.  See, e.g., 136 Cong. Rec.
11536-01 (1990); Statement by President George Bush Upon Signing H.R. 1465, 26 Weekly
Compilation of Presidential Documents 1265 (Aug. 27, 1990).  Nonetheless, the Court is
unable to discern exceptions in the Congressional language for smaller water bodies and
watersheds where oil spills occur.

Likewise, the Superfund Amendments of 1986 to CERCLA speak in terms of the "responsibilities" of natural resource trustees and anticipate that "the Federal or State trustee would perform assessments of damage to resources under its own jurisdiction," while Federal trustees "may perform assessments on behalf of States if they are reimbursed . . . ." S. Rep. No. 99-11, at 43 (1985), reprinted in Arnold & Porter LLP, Superfund Amendments and Reauthorization Act of 1986 Legislative History 3 (1993); see H.R. Rep. No. 99-253(I), at 133 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2915; H.R. Conf. Rep. No. 99-962 (1986), reprinted in 1986 U.S.C.C.A.N. 3276, 3297-98.

Section 107 of CERCLA establishes liability of a responsible party to the United States and the states for damages to natural resources resulting from unlawful releases of hazardous pollutants. While the states are the primary trustees for natural resources within their borders, the Federal trusteeship over natural resources arises out of Federal responsibilities to manage and protect living and non-living natural resources. The Federal agencies exercising the trusteeship include the National Oceanic and Atmospheric Administration (NOAA) (for marine resources), the U.S. Department of the Interior (DOI) (for inland fish and wildlife and natural resources on public lands), and the Environmental Protection Agency (EPA) (for ground water).

The primary obligations of the federal trustees under CERCLA are twofold. The trustees are *directed* to assess the damages to natural resources under their authority in order to determine the degree of injury and the value of the damages resulting from the releases. With this information, they are then *directed* to bring actions against responsible parties to recover the damages to the natural resources and to use the sums recovered to restore the natural resources.  In the event that responsible parties are unavailable, CERCLA authorizes trustees to file claims against the Fund to recover the costs of assessing the damages and restoring the natural resources.

The overall relationship of the natural resource responsibilities with the public health responsibilities constitutes one recurring issue in examining the CERCLA program. While CERCLA generally establishes separate responsibilities in the case of the natural resource trustees, the CERCLA program as it has evolved has tended to emphasize greater and greater cooperation between the natural resource agencies and the public health mission of EPA. In responding to immediate releases of hazardous substances, in assessing damages resulting from releases, in developing longer-term remedial programs for specific sites in the most efficient and cost-effective manner,

9

and in pursuing responsible parties, more and more emphasis should be placed upon coordinating the Federal effort to increase its effectiveness and efficiency.

H.R. Rep. No. 99-253(IV) at 39-40 (1985), reprinted in 1986 U.S.C.C.A.N. 3068, 3069 (emphasis added). Thus, the legislative history appears to reflect Congressional intent to entrust the government as trustee with a non-discretionary duty to assess damages where a discharge of oil or hazardous substances has occurred and harmed the natural resources under its authority.

Nonetheless, despite this legislative history, the regulations implementing the legislation explicitly provide that the duty is discretionary.

> The Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended, 42 U.S.C. 9601 et seq., and the Clean Water Act (CWA), 33 U.S.C. 1251-1376, provide that natural resource trustees *may* assess damages to natural resources resulting from a discharge of oil or a release of a hazardous substance covered under CERCLA or the CWA and may seek to recover those damages. This part supplements the procedures established under the National Oil and Hazardous Substances Pollution Contingency Plan (NCP), 40 CFR Part 300, for the identification, investigation, study, and response to a discharge of oil or release of a hazardous substance, and it provides a procedure by which a natural resource trustee can determine compensation for injuries to natural resources that have not been nor are expected to be addressed by response actions conducted pursuant to the NCP. *The assessment procedures set forth in this part are not mandatory.* However, they must be used by Federal or State natural resource trustees in order to obtain the rebuttable presumption contained in section 107(f)(2)(C) of CERCLA. This part applies to assessments initiated after the effective date of this final rule.

43 C.F.R. § 11.10 (1988) (emphasis added). The Tenth Circuit gives controlling weight to legislative regulations where Congress has delegated authority to an agency, "unless they are arbitrary, capricious, or manifestly contrary to the statute." Maier v. EPA, 114 F.3d 1032, 1040 (10th Cir. 1997), quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984).

10

Here, however, there is no evidence demonstrating that plaintiff challenged the regulation within the applicable time period.  CERCLA provides:

> Review of any regulation promulgated under this chapter may be had upon application by any interested person only in the Circuit Court of Appeals of the United States for the District of Columbia.  Any such application shall be made within ninety days from the date of promulgation of such regulations. Any matter with respect to which review could have been obtained under this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement or to obtain damages or recovery of response costs.

42 U.S.C. § 9613(a).  The OPA contains almost identical language.  See 33 U.S.C. § 2717(a).  The Court of Appeals for the D.C. Circuit has held that the time period can be made to run anew when the promulgating agency "constructively reopens" the regulation by revising it, otherwise creating an opportunity for renewed comment and objection to it, or if "its original rulemaking did not give adequate notice or incentive to contest the agency's decision."  National Ass'n of Mfrs. v. Dep't of Interior, 134 F.3d 1095, 1103-04 (D.C. Cir. 1998).  There is no evidence to indicate that 43 C.F.R. § 11.10 (1988) has been constructively reopened.  Accordingly, the Court  finds that neither the CWA, OPA, nor CERCLA imposes non-discretionary duties on the United States to assess damages

11

for injury to, destruction of, or loss of natural resources which it administers in trust.[4]  While this finding is dispositive of this issue, in an abundance of caution and because the arguments are reurged in relation to other counts, the Court addresses the remainder of the United States' bases for dismissal of count I.

**B.      Natural Resources Damages Payable to Citizens.**

Plaintiff's second argument is that natural resource damages are not payable to citizens. CERCLA, OPA, and CWA authorize payment of natural resource damages to governmental entities. See 42 U.S.C. § 9607(f)(1), 33 U.S.C. § 2706(a); 33 U.S.C. §1321(f)(5).  The case law makes clear that CERCLA, in particular, "does not permit private parties to seek recovery for damages to natural resources held in trust by the federal, state or tribal governments nor does it allow public trustees to recover for damages to private property or other 'purely private' interests." National Ass'n of Mfrs. v. Department of Interior, 134 F.3d 1095, 1113-14 (D.C. Cir. 1998) (citing State of Ohio v. Department of Interior, 880 F.2d 432, 460 (D.C. Cir. 1998), and Exxon Corp. v. Hunt, 475 U.S. 355,

---

[4]       The United States argues that the "Tenth Circuit and other circuit court precedent establish that, to state a non-discretionary duty, a statute must place an agency under a "clear-cut" duty to perform an act by a date certain."  In relation to an argument as to standing, the Tenth Circuit remarked that Congress restricted citizens' suits to actions seeking to enforce specific non-discretionary clear-cut requirements of the Clean Air Act," and one of those requirements was that a State adopt a schedule to establish an inspection/maintenance program which achieved the required 25% reduction in both hydrocarbon and carbon monoxide exhaust emissions by 1987.  Mountain States Legal Found. v. Costle, 630 F.2d 754, 766 (10th Cir. 1980).  In another Clean Air Act case cited by the United States, the opinion reads:  "In order to impose a clear-cut nondiscretionary duty, we believe that a duty of timeliness must 'categorically mandat[e]' that *all* specified action be taken by a date-certain deadline." Sierra Club v. Thomas, 828 F.2d 783, 791 (D.C. Cir. 1987) (emphasis in original).  A duty of timeliness is not at issue here; instead, plaintiff alleges that two federal agencies have breached a duty to assess damages for injury to, destruction of, or loss of natural resources for those resource under their trusteeship.

375 (1986)).   "Purely private resources," includes private property for which there is no "government involvement, management, or control."  State of Ohio, 880 F.2d at 460.

Quarles maintains that he is not seeking damages for purely private resources, as his surface estate is "appertaining to" natural resources under the exclusive management authority of the United States.  See 33 U.S.C. § 1321(b)(1); 33 U.S.C. § 2706(a)(1); 42 U.S.C. § 9607(f)(1).  Quarles has alleged that he represents "citizens who live, recreate and use the land, water and natural resources adjoining and appertaining to the Osage Mineral Reservation." Amended Complaint, Dkt. #15, ¶ 22. He has also generally alleged impacts on waters of the Arkansas River, Skiatook Lake, Keystone Lake, Birch Lake and the Quaternary and Ada-Vamoosa Aquifers, as well as those to the "navigable, surface, and ground waters in and appertaining to Osage Indian Country," "soil, groundwater and surface water in Osage County and Osage Indian Territory," and "land, groundwater, drinking water and  . . . other resources owned, used, leased or enjoyed by Quarles and all other similarly situated beneficiaries in Osage Indian Country." Id.,  ¶¶ 26, 34, 39-43, 45-46, 49, 55.  He claims that his use, as a surface property owner, of the subsurface estate, underground water supply, and other water sources entitles him at least to declaratory and injunctive relief, if not damages.

Taking his allegations as true for purposes of the motion to dismiss, Quarles has constitutional standing to complain of any failure by the government to assess natural resource damages.  To have Article III standing, a plaintiff must demonstrate (1) an injury in fact; (2) that is fairly traceable to the challenged conduct; and (3) that is likely to be redressed by a favorable decision.  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103 (1998); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Committee to Save Rio Hondo v. Lucero, 102 F.3d 445, 447 (10th Cir. 1996).  He has claimed injury in fact to his use and enjoyment of the natural

resources under the BIA's management.  In particular, he claims injury due to the advanced erosion to surface lands that appertain to the Osage mineral estate and the loss of use of the watershed and all other federally supervised natural resources.  <u>See</u> Amended Complaint, Dkt. # 15, at ¶ 58.  The allege injury is traceable to the alleged conduct of the BIA in failing to assess damage to natural resources under its trusteeship and in failing to abate any migration of oil field wastes into the underground aquifers and other resources.  A decision requiring the BIA to comply with its non-discretionary duties would redress these alleged injuries.

Count I is not subject to dismissal merely because Quarles is not entitled to monetary damages.  He also sought declaratory and injunctive relief.  See Amended Complaint, Dkt. # 15, at 32.  Further, he has constitutional standing to assert the citizen suit permitted by the applicable statutes.

## C.      CERCLA Excludes Petroleum from its Coverage

Natural resource damages under CERCLA are limited to those associated with substances defined as "hazardous."  42 U.S.C. § 9607(a)(4)(C).  The term "hazardous substance" excludes "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance" under specific provisions of CERCLA, CWA, the Solid Waste Disposal Act, the Clean Air Act, or the Toxic Substances Control Act.  42 U.S.C. § 9601(14).  Plaintiff argues that this exclusion is inapplicable to tank bottom sludge, produced waste water, stimulation chemicals, reserve pit wastes, fracturing and acidizing fluids and other miscellaneous wastes generated by the exploration, development, and production of crude oil and natural gas.  <u>See</u> <u>Cose v. Getty Oil Co.</u>, 4 F.3d 700, 707 (9th Cir. 1993); <u>Mid-Valley Bank v. North Valley Bank</u>, 764

F. Supp. 1377, 1384 (E.D. Cal. 1991); United States v. Western Processing Co., 761 F. Supp. 713, 721-22 (W.D. Wash. 1991); Washington v. Time Oil Co., 687 F.Supp. 529, 532 (W.D. Wash. 1988).

Thus, plaintiff effectively concedes that he does not allege damages to natural resources from contaminants indisputably within CERCLA's petroleum exclusion, but the government does not dispute that the other wastes are not within the exclusion. Accordingly, the government's argument as to CERCLA's petroleum exclusion warrants dismissal of count I only insofar as it pertains to contaminants that qualify for the exclusion.

**D.    EPA is not a Natural Resource Trustee**

Finally, defendants argue that count I should be dismissed as to the EPA because the EPA is not a natural resource trustee under either OPA, CWA, or CERCLA. These statutes give the President the authority to designate natural resource trustees for the purpose of assessing natural resource damages. 33 U.S.C. § 2706(b); 33 U.S.C. § 1321(f)(5); 42 U.S.C. § 9607(f); see 61C Am. Jur. 2d Pollution Control § 1501. Executive Orders 12,580 and 12,777 indicate that the President has named the Secretaries of Defense, Interior, Agriculture, Commerce, and Energy as natural resource trustees. Exec. Order No. 12,580, 52 Fed. Reg. 2923, 2924 (Jan. 23, 1987); Exec. Order No. 12,777, 56 Fed. Reg. 54747, 54758-59 (October 18, 1991) (as amended by Exec. Order No. 13286, Sec. 34, 68 Fed. Reg. 10619, 10625 (Feb. 28, 2003)). Under the National Contingency Plan, in particular, the Secretary of the Interior has been designated trustee for natural resources "managed or controlled by the DOI" and those "for which an Indian tribe would otherwise act as trustee in those cases where the United States acts on behalf of the Indian tribe." 40 C.F.R. § 300.600(b)(2).

In its initial response to the United States' motion to dismiss, plaintiff did not respond to the argument that the EPA is not a natural resource trustee and referenced only the BIA as the agency

15

with a non-discretionary duty to assess natural resource damages.  In reply, the United States remarked that plaintiff had abandoned its claim against the EPA and conceded that EPA is not a natural resource trustee.  Reply Br., Dkt. # 62, at 5 n.3.  Further, the United States accepted, solely for purposes of the motion to dismiss, that Quarles might be able to show that the BIA is a trustee for some natural resources within the scope of the Amended Complaint.  Id.  However, in his supplemental brief, Quarles remarked that he had not conceded.  Instead, he claimed that he did not have substantial evidence to know whether the BIA or EPA or both are natural resource damage "trustees"under the CWA, OPA, and CERCLA.  He also claimed that the Osage Tribe could be a trustee under 33 U.S.C. § 2706(b)(4).

The Court finds that this is not a factual issue but a legal one.  Under the statutory provisions, executive orders, and regulations cited by the United States as to this issue, the EPA is not a natural resource trustee under CERCLA, CWA, or OPA.  While the United States has not cited authority indicating that any of the departments designated by the President has further delegated its responsibilities as a natural resource trustee to the BIA, the United States has conceded that the BIA is a natural resource trustee at least for some of the natural resources at issue here.  Thus, any claim against the EPA in count I should be dismissed.  It is also dismissed as to the BIA because Quarles has not alleged a non-discretionary duty.

## V.

The allegation in count II is that the BIA and the EPA have violated the APA, 5 U.S.C. §§ 701 and 706, by failing to adequately remediate oil pollution on Quarles' property.  In general, section 706(2)(A)- (D) provides that in all cases, agency action must be set aside if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," if the action

failed to meet statutory, procedural, or constitutional requirements, or if the action was unsupported by substantial evidence or unwarranted by the facts in certain types of cases.  Quarles specifically alleges that (a) the BIA and EPA released well operators notwithstanding that the repairs to the wells were inadequate to stop the leaking of oil and/or waste water and notwithstanding that the remediation to the surface was wholly inadequate and incomplete; (b) they failed to consider the environmental ramifications of their actions and inactions in accordance with federal environmental statutes policy and regulations; (c) they failed to consider all of the relevant factors in reaching their decisions to remediate or not to remediate; and (d) they ignored studies by the USGS demonstrating that soil, groundwater, and surface water in Osage County have been and are continuing to be polluted and contaminated by produced waste water from oil and gas exploration and production. Amended Complaint, Dkt. # 15, at 13, ¶¶ 63, 65, 67.

The United States argues that this count should be dismissed because (1) CERCLA excludes petroleum pollution; (2) CERCLA bars pre-enforcement review of remediation decisions; and (3) plaintiff does not seek relief authorized by the APA.  As set forth above, CERCLA does not exclude all oil field waste from its coverage; hence, this argument does not warrant dismissal of count II in its entirety.  The second argument is grounded in 42 U.S.C. § 9613, which provides, in relevant part,

(h) Timing of review

No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

17

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

42 U.S.C. § 9613(h).

Plaintiff has brought a citizen suit under 42 U.S.C. § 9659; thus, 42 U.S.C. § 9613(h)(4) applies.  The issue remains as to whether a removal or remedial action has been "selected" or "taken," or "secured." The parties focus on whether the BIA has implemented, or merely selected, remedial and response actions in this matter.  Plaintiff argues that the BIA's informal agency decision and refusal to act (after an operator responded to a BIA remediation request by merely broadcasting grass seed on top of contaminated property) constitutes implementation of a remedial and response action.  More specifically, Quarles alleges that the BIA made a decision to approve the remediation of the site by the operator, and he also alleges that the BIA released operators, notwithstanding that repairs to wells were inadequate to stop the leaking of oil and/or waste water.

While these allegations do not establish that the actions taken were officially "selected" under the statute by the BIA or that the BIA has actually "taken" or "secured" such actions, "[t]he APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred. See 5 U.S.C. §§ 551(13), 704, 706." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).  Arguably, the alleged BIA action in response to the remediation requested in Osage County constitutes such "informal agency action."  While plaintiff alleges that the BIA and EPA failed to compile any administrative record,

18

that is a separate issue.  If it is true, the proper course would be for the Court to remand the action to the agency for additional investigation or explanation, see id., not to dismiss count II.

The government's third argument for dismissal of count II is that plaintiff does not seek relief authorized by the APA.  In plaintiff's prayer for relief at the end of his Complaint, he seeks (1) class certification; (2) a declaration that EPA's and BIA's actions violate his rights; (3) an injunction requiring EPA and BIA "to abate or contain the imminent and threatened contamination and pollution of the natural resources appertaining to the Osage Mineral Reservation"; and (4) money damages, including punitive damages.  Amended Complaint, Dkt. # 15, at 32.   Under 5 U.S.C. § 706, the Court may "hold unlawful and set aside" the challenged agency action.  This is the relief sought by plaintiffs under count II, notwithstanding the broader language of the prayer for relief as it pertains to all counts.  Further, declaratory and injunctive relief are available under the APA if it is determined that the BIA or EPA have taken final agency action. See 5 U.S.C. § 702 (section of APA waiving federal sovereign immunity in cases challenging agency action and seeking relief other than money damages).  Thus, while plaintiff cannot obtain money damages based upon any determination that the BIA or EPA have violated the APA, count II is not subject to dismissal merely because he seeks money damages for other claims.

The United States argues, in its reply brief, that the plaintiff has attempted to characterize count IV's CERCLA non-discretionary duty claim in the alternative as an APA claim under count II.  See Pl. Resp. Br., Dkt # 54, at 15.  In Bowen v. Massachusetts, 487 U.S. 879, 903 (1988), the Supreme Court stated that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," id. at 903, but the Court held that 5 U.S.C. § 704 did not bar the action there because there was not "an adequate remedy in any court"

19

for the final agency action at issue.[5]   Section 704 provides that "[e]very agency action made

reviewable by statute and every final agency action for which there is no other adequate remedy in

any court shall be subject to judicial review." 5 U.S.C. § 704.   The citizen suit provisions of

CERCLA, OPA, and CWA all make agency action reviewable by statute. 42 U.S.C. § 9659(a)(2)

(CERCLA); 33 U.S.C. § 1365(a)(2) (CWA); 33 U.S.C. § 2706(g) (OPA).   These provisions

specifically permit Quarles to file suit against the United States where there is alleged a failure to

perform a non-discretionary act or duty.   Further, CERCLA and CWA permit him to file suit against

private entities "alleged to be in violation of any standard, regulation, condition, requirement, or

order" under the relevant statutes.   42 U.S.C. § 9659(a)(1) (CERCLA); 33 U.S.C. § 1365(a)(1)

(CWA).

> This court, in turn, in determining whether an adequate remedy exists, has focused
> on whether a statute provides an independent cause of action or an alternative review
> procedure. Succinctly put, where a statute affords an opportunity for de novo
> district-court review, the court has held that APA review was precluded because
> Congress did not intend to permit a litigant challenging an administrative denial . .
> . to utilize simultaneously both [the review provision] and the APA. In a distinct line
> of cases, the court also has held APA review is unavailable where there is a private
> cause of action against a third party otherwise subject to agency regulation.

El Rio Sant Cruz Neighborhood Health Center, Inc. v. United States Dep't of Health & Human

Servs., 396 F.3d 1265, 1270-71 (D.C. Cir. 2005) (internal quotation marks and citations omitted).

Since plaintiff has an adequate remedy in federal court for the alleged final agency action at issue,

count II is subject to dismissal.

---

[5]       In the other case cited by the government, Middlesex County Sewerage Authority v.
National Sea Clammers Ass'n, 453 U.S. 1 (1981), the Supreme Court remarked that "[w]hen
the remedial devices provided in a particular statute are sufficiently comprehensive, they
may suffice to demonstrate congressional intent to preclude the remedy of suits under [42
U.S.C.] § 1983." Id. at 20.

# VI.

Plaintiff's third claim against the United States is for breach of the "Indian Trust Doctrine." That doctrine arises by virtue of the federal government's "special trust obligation to protect the interests of Indian tribes, including protecting tribal property and jurisdiction. HRI, Inc. v. Environmental Protection Agency, 198 F.3d 1224, 1245 (10th Cir. 2000) (citations omitted). As a result, "the federal executive is held to a strict fiduciary standard in relations with Indian tribes and is to take 'all appropriate measures for protecting and advancing' those tribes' interests." Id. (quoting United States v. Creek Nation, 295 U.S. 103, 109-10 (1935)). Since the trust relationship is between the United States and Indian people, the United States argues that Quarles' claim must be dismissed because he is not an Osage Indian. The Court agrees.

The United States Supreme Court remarked in United States v. Mitchell, 463 U.S. 206 (1983): "This Court and several other federal courts have consistently recognized that the existence of a trust relationship between the United States and an Indian or Indian tribe includes as a fundamental incident the right of an injured beneficiary to sue the trustee for damages resulting from a breach of the trust." Id. at 225-26 (footnote and citations omitted). Quarles argues that he is a beneficiary because he relies on the trust corpus for the sustenance of life and uses the natural resources appertaining to that corpus. The Court is not persuaded.

The Mitchell court noted that, where the government had assumed control over forests and property belonging to Indians, "[a]ll of the necessary elements of a common-law trust are present: a trustee (the United States), a beneficiary (the Indian allottees), and a trust corpus (Indian timber, lands and funds). Id. at 225 (citing to Restatement (Second) of the Law of Trusts § 2, Comment h, at 10 (1959)). The  natural import of this language is that the Indian Trust doctrine may be invoked

21

only on behalf of the Osage Indians who own interests in the subsurface mineral estate in Osage County, i.e., the trust corpus.  Similar language in other cases also supports this conclusion.  See, e.g., Oneida County v. Oneida Indian Nation, 470 U.S. 226, 247 (1985) (referencing the "unique trust relationship between the United States *and the Indians*" (emphasis added)); Morton v. Mancari, 417 U.S. 535, 555 (1974) (recognizing "'Congress' unique obligation *toward the Indians*" (emphasis added)).  Count III must be dismissed.

## VII.

Finally, Quarles asserts in count IV that the United States has breached a non-discretionary duty to create an administrative record under CERCLA, 42 U.S.C. § 9613.  The United States moves to dismiss this claim for many of the same reasons it moves to dismiss counts I and II:  CERCLA excludes petroleum pollution, plaintiff alleges no non-discretionary duty, CERCLA does not authorize the relief plaintiff seeks, and CERCLA § 113(h) precludes pre-enforcement relief. However, the key provision invoked by plaintiff is 42 U.S.C. § 9613 (k)(1), which provides:

> The President shall establish an administrative record upon which the President shall base the selection of a response action. The administrative record shall be available to the public at or near the facility at issue. The President also may place duplicates of the administrative record at any other location.

42 U.S.C. § 9613(k)(1).  The statute also provides for certain participation procedures in removal and remediation actions (§ 9613(k)(2)), and specifically limits judicial review of issues concerning the adequacy of any response action taken or ordered by the President to the administrative record (§ 9316(k)(j)(1)).

Plaintiff again argues that use of the word "shall" in the statute, and in 40 C.F.R. § 300.420, mandates a non-discretionary duty upon the BIA or EPA.  The regulation employs the word "shall" several times as it describes "the methods, procedures, and criteria the lead agency shall use to

22

collect data, as required, and evaluate releases of hazardous substances, pollutants, or contaminants."
40 C.F.R. § 300.420(a).  The government points out language in 40 C.F.R. § 300.400(i)(3) which
effectively trumps plaintiff's argument:   "Activities by the federal and state governments in
implementing this subpart [E, which includes § 300.420] are discretionary governmental functions."
Id.  The Court also notes that the statutory provision cited by plaintiff in this count is not contingent
on the government's duties as trustee of the natural resources at issue, and, in any event, the Court
has determined that the government does not have a non-discretionary obligation to assess damages
as a natural resource trustee (see part IV above).  For the same reasons, the government does not
have a non-discretionary duty to create an administrative record.

## VIII.

        For these reasons, the United States' Motion to Dismiss Plaintiff's Amended Complaint
(Dkt. # 50) is hereby **GRANTED**.  Plaintiff's claims against the United States defendants are
dismissed.

        **DATED** this 28th day of September, 2005.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT