IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DON QUARLES, an Individual, and OSAGE ENVIRONMENTAL CONSERVATION FOUNDATION, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, ex rel. BUREAU OF INDIAN AFFAIRS; UNITED STATES OF AMERICA, ex rel. ENVIRONMENTAL PROTECTION AGENCY; TEXACO INC.; GETTY OIL CO.; PHILLIPS PETROLEUM COMPANY; SUN OIL CO.; LITTLE RIVER ENERGY CO.; YARHOLA PRODUCTION CO.; SPESS OIL COMPANY, INC.; CHAMBERS & HENDRIX OIL & GAS, INC.; and JOHN DOES 1-1000,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 00-CV-913-EA (J)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUUPPORT OF DEFENDANT OF SUNOCO, INC.

### SUMMARY

Plaintiff cannot identify any property or activity of Sunoco, Inc. ("Sunoco") that is or has had contact with his land, much less caused actual harm to him or his land. Plaintiff cannot identify any property of Sunoco that is on Plaintiff's land, harm-causing or not. Plaintiff cannot even identify any property of Sunoco that is or was within Osage County. The absence of evidence on which any reasonable juror could rely to find that Sunoco caused or contributed to any harm suffered by Plaintiff makes Plaintiff's claims proper for summary judgment.

Even if Plaintiff could identify property of Sunoco, and even if Plaintiff could offer evidence that a Sunoco or an historical Sunoco entity had caused harm to him or his land, Plaintiff cannot state a claim against Sunoco. No Sunoco related-entity has explored for or produced oil or gas domestically since 1988, when its exploration and production company became an independent, publicly-listed corporation. For claims based on acts dating before 1988, the claims fail because all exploration and production liabilities – including any claims of Plaintiff – can be brought only against the successor entity.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law applicable to the claimed causes of action will identify the material facts. *Id.* The judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his favor. *Id.* at 255.

2

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Sunoco, Inc. ("Sunoco"), sued herein as "Sun Oil Company," does not own, lease or operate any exploration or production properties or conduct oil or gas exploration or production activities in Osage County, Oklahoma. Affidavit of Thomas J. Haines ("Haines Aff."), ¶ 2. (Exhibit 1)

2. All of the property identified in the Second Amended Complaint as plaintiff's property (the "Quarles Property") lies within Osage County, Oklahoma. Second Amended Complaint, ¶ 2.

3. Sunoco has no record of exploration or production wells in Osage County, Oklahoma. Haines Aff., ¶ 3.

4. Plaintiff does not know of any present or past operation by a Sunoco-related entity on any of his properties. Deposition of Donald Quarles, February 16, 2005, p. 185, ll. 8-16. (Exhibit 2)

5. Plaintiff does not know of any spill or any pollution by any Sunoco entity anywhere in Osage County, and he does not know of any other person who

3

believes that a Sunoco entity was involved in pollution in Osage County. *Id.* at ll. 17-25.

6.  Plaintiff's expert witness has no evidence of pollution caused by a Sunoco-related entity. Deposition of J. Berton Fisher, May 10, 2005, p. 198, ll. 12-22. (Exhibit 3)

7.  Plaintiff's determination of what is a Sunoco-related entity was made by Plaintiff's expert Fisher, who relied solely upon his "general knowledge of the industry" to determine what is and is not a Sunoco-related entity. *Id.* at 193, ll. 16-23.

8.  In Oklahoma, producers who contract for transportation of their production indicate that fact at the production location. Production often is stored in tanks on-site until it is retrieved by truck. Haines Aff., ¶¶ 6.

9.  Production can be identified as being contracted to a particular transport company by that company's name and information being posted or painted on a storage tank. When this occurs, it does not indicate that the transport company owns or operates the land, the lease, the wellhead, or the tanks where production occurs. Haines Aff., ¶¶ 7.

10. Three photographs attached to the Fisher expert report show storage tanks labeled "Stuart North." (Exhibit 4) These tanks are mentioned in the report prepared by Plaintiff's other expert witness, Kerry Sublette. *See* Report of Kerry Sublette, May 30, 2006, at table, line 14. (Exhibit 5)

The tanks are described as "Stuart Tank Battery," ½ mile east of an intersection that is southwest of the town of Avant. *Id.*

11.    Sunoco does not own or operate the land, storage tanks, or any other aspect of the property depicted in the photographs. Haines Aff., ¶¶ 8-9.

12.    The logo of Sunoco Logistics Partners, LP, appears in the photographs. (*See, e.g.,* Sunoco Logistics Partners, LP Annual Report for 2005, featuring its logo on the cover) (Exhibit 6). The property is not maintained or owned by Sunoco Logistics Partners, LP. Haines Aff., ¶ 10. The pictured tank also shows the property number of the lease, the tank number, the tank height, the draw height, and the Oklahoma Tax Commission number for Sunoco Logistics Partners, LP. All of this information is set out on the storage tank so that truck drivers who pick up oil from the tanks can prepare tickets of custody transfer. Sunoco Logistics Partners is not now, and has never been engaged in oil and gas exploration and production. *Id.*

13.    Predecessor corporate entities of Sunoco explored for and produced oil and gas beginning in the late 19th century, initially in Pennsylvania, and later in other states. Predecessor corporate entities of Sunoco may have engaged in exploration or production activity in Osage County, Oklahoma, but Sunoco has no information with respect to any possible historical operations by predecessor entities because the relevant predecessor corporate entities were acquired by other corporations. Haines Aff., ¶ 12.

14. In 1971, Sun Oil Company, a Delaware corporation, was formed to manage all exploration and production operations of Sun Oil, Inc. Sun Oil Company of Delaware a/k/a Sun Exploration and Production Company ("Sun E&P") was headquartered in Dallas, Texas. Dallas is where Sun Oil Company's exploration and production operations had been based prior to the creation of Sun E&P in 1971. Haines Aff., ¶ 13.

15. Sun E&P functioned as a separate company from the refining and marketing operations, which were operated by Sun Oil of PA, headquartered in Pennsylvania. Haines Aff., ¶ 14.

16. In 1988, Sunoco was restructured. Shares were issued in Sun E&P, making it an independent, publicly-traded company. Sun E&P focused on domestic oil and gas exploration and production, leaving Sunoco to focus on refining and marketing. Performance Profiles of Major Energy Profiles 1998, Office of Energy Markets and End Use of the Energy Information Administration, U.S. Department of Energy (January 2000), Table A1, fn. u (Exhibit 7); Haines Aff., ¶ 15.

17. Upon becoming a publicly-held corporation, Sun E&P changed its name to "Oryx Energy Company" ("Oryx"). Oryx was listed on the New York Stock Exchange. The Sun E&P oil and gas exploration and production activities and history continued as the activities and history of Oryx Energy Company. Haines Aff., ¶ 16.

18.    Oryx Energy was legally responsible for its activities, as well as those of its predecessor, Sun E&P. This obligation was established by the October 7, 1988 Distribution Agreement between Sun Exploration and Production Company, a Delaware Corporation and Managing Partner of Sun Energy Partners L.P., and certain other Subsidiary or Affiliate limited partnerships and Sun Company, Inc, a Pennsylvania Corporation, by which Sun E&P became independent from Sun Company, Inc. Haines Aff., ¶ 17.

19.    Oryx Energy Company was acquired by and merged into Kerr-McGee Corporation in 1998. *See* Exhibit 7 at Table A1, fn. o.

20.    On June 23, 2006, Anadarko Petroleum Corporation announced that it entered into an agreement to acquire Kerr-McGee Corporation in its entirety. *See* News Release (Exhibit 8)

### ARGUMENT AND AUTHORITIES

A.    PLAINTIFF CANNOT ESTABLISH THAT SUNOCO CAUSED HARM TO ANY OF HIS INTERESTS

   1.  PLAINTIFF CANNOT TIE ANY HARM ALLEGED IN THE SECOND AMENDED COMPLAINT TO ANY CONDUCT BY SUNOCO

The Second Amended Complaint alleges as to Sunoco that:

   "Sun (or its predecessors and affiliated entites) operated oil and gas facilities either on Quarles properties, adjacent to Quarles properties, or within proximity to Quarles properties such that Sun's operations contributed to the pollution, ongoing pollution or threatened pollution (of water and watersheds) and injured his property rights, including loss of use, annoyance and inconvenience.

*Id.* at ¶ 53. Plaintiff cannot support this allegation with admissible evidence.

According to Plaintiff's expert witness, Sunoco is responsible for two wells on Quarles' properties – one each on the Quarles East and Quarles West property. Deposition of J. Berton Fisher, May 10, 2005, at p. 191, ll. 14-21. Despite looking around, however, Fisher admits that he found no physical evidence that a well ever existed as he claims on the East property. *Id.* at p. 192, ll. 7-9; p. 194, ll. 17-22. Instead, the best that Fisher can say is that "a completion record was filed for that spot location that had a Sun entity associated with it. . . ." *Id.* at p. 192, ll. 11-13.

Fisher's opinion is the same as to the other alleged Sunoco well. Fisher walked around the site looking for proof of his theory, but found that "there is no current surface evidence of that well location." *Id.* at. p. 194, l. 23, to p. 195, l. 15.

The sum of Fisher's expert opinion as to Sunoco – and thus, the sum of Plaintiff's evidence as to Sunoco – is that he has no direct evidence of current or former pollution by either of the alleged Sunoco wells:

| 12 | **Q   With respect to either of the yellow wells** |
|----|----|
| 13 | **that you can't find any record of, do you have any** |
| 14 | **evidence of any kind that either one of those wells** |
| 15 | **at any time ever caused any pollution?** |
| 16 | A   I have no evidence of any current -- |
| 17 | current surface pollution. |
| 18 | **Q   Do you have any evidence of any kind** |
| 19 | **that at any time either of those wells that are** |
| 20 | **identified as yellow M&Ms on your Quarles** |
| 21 | **properties ever caused any pollution?** |
| 22 | A   I have no direct evidence of that. |

*Id.* at p. 198, ll. 12-25.

The reason that Plaintiff tries but fails to tie Sunoco to activity that allegedly harmed Plaintiff is due to the faulty methodology employed by Plaintiff's expert.

Fisher relied upon a database created by a third party to identify corporations that might have had wells in Osage County. Fisher testified that the database is comprised of completion records for the State of Oklahoma as sold by the "Oil-Law Reporter." Fisher Dep. at pp. 182-184.

Because Fisher relied only upon completion records, he is unable to identify if and when ownership of a completed well transfers from one company to another:

```
14        Q   Did you find any reference to Kerr-McGee
15    in your work with regard to Osage County?
16        A   There is the -- no record of Kerr-McGee in
17    the list of operator designations in that database.
18        Q   Would it be fair to say that when you use
19    the phrase "operator designations," you're
20    referring to an operator designation as identified
21    in a completion record.  Is that right?
22        A   Yes.
23        Q   And so anything other than what -- what
24    the fact of life was at the time a completion record
25    was filed with the Corporation Commission, you

                                              Page 187

1     don't have it?
2         A   That's correct.
```

*Id.* at pp. 186, l. 14, to 187, l. 2. Fisher's inability to determine what operator is responsible for any given well at any point in time means that his opinion is valid only to the extent that there was never a change of ownership of a well from the time the well was completed until now. This flaw in Fisher's method is revealed by his failure to identify Oryx Energy as the successor to Sun E&P:

16          Q   I do not see any notice in your report of a
17     company called Oryx.  Did you find any
18     information in your report regarding a company
19     called Oryx?  That would be O-R-Y-X.
20          A   Within the designations of operators in
21     that database which reflects completion records,
22     there is no Oryx designation.
23          Q   So, for example, if a completion record is
24     the only record that's in there, if a company
25     acquires a well upon completion of the well -- a

                                                    Page 185

1     new company, a new operator acquires the well, as
2     I understand, that doesn't turn up in your
3     database?
4          A   Doesn't turn up in that database.
5          Q   All right.  Did you look into that issue as
6     a part of your evaluating your work for this law
7     firm?
8          A   No.
9          Q   Do you know what Oryx is or was?
10          A   I know that Oryx is an oil and gas
11     company.
12          Q   Do you know where it came from?
13          A   No.
14          Q   Do you have any information any interest
15     in an oil company Oryx -- with the name "Oryx" --
16     the word "Oryx" in its name had in any of the
17     areas you looked at in Osage County?
18          A   There is no record in the database of any
19     entity named Oryx associated with any wells in
20     that particular database.
21          Q   What does the database show to be the
22     last completion date for a well for Sun?
23          A   I've not listed that as relevant.

*Id.* at p. 184, l. 9 to p. 185, l. 23. According to Fisher, Oryx was not the successor to

Sun E&P – a position that cannot be reconciled with the undisputed fact that Oryx

was the successor to Sun E&P. Likewise, Fisher testified that there is "no record of

insufficient for purposes of determining Sunoco's relationship to the allegations of the Second Amended Complaint.

### 2. The "Sunoco storage tank" is not property of Sunoco

Plaintiffs cite to a storage tank as evidence of Sunoco's exploration or production. (*See* photograph attached as exhibit to Fisher Report) (Exhibit 4); *see also* Sublette Report at table, line 14) (Exhibit 5). The name "Sunoco" and a logo are painted on the tank in question. This labeling of the tank does not establish Sunoco's ownership or control of the tank.

Because Sunoco's business does not include exploration and production, it does not own exploration equipment or production-related storage tanks in Oklahoma. Haines Aff., ¶¶ 2; 4-5.[1]

Production can be identified as being contracted to a particular transport company by that transport company's name and other information being posted or painted on a storage tank. This information enables truck drivers to prepare chain of custody records when they remove oil from the tanks. The posting of information on a tank does not reflect ownership or operation of the land, the lease, or the tanks where production occurs. Haines Aff., ¶ 7.

The photographs attached to the Fisher expert report show storage tanks labeled "Stuart North." These tanks are mentioned in the Sublette Report at table, line 14.

---

[1] Sunoco owns and operates a refinery at 1700 South Union Avenue in Tulsa. As part of its refining plant, Sunoco maintains storage tanks. These tanks are unrelated to any exploration or production activity, however, and Sunoco's Tulsa refinery is not cited by Plaintiff as the source of any alleged pollution.

Kerr-McGee in the list of operator designations" in Fisher's database of current or historical Osage County operators. *Id.* at p. 186, ll. 14-17. According to Fisher's understanding, Kerr-McGee did not acquire Oryx Energy in a merger in 1998. Fisher's opinion is based on records that are many decades old. His reliance on those unverified records concerning the ownership of production results in an expert opinion that is contradicted by undisputed material fact.

Plaintiff's failure to track the corporate succession of Sun E&P was caused by its delegation of that task to its expert witness. Fisher decided what companies would be attributed to what wells and his decisions were the basis for the allegations in the Complaint:

> **Q   So the answer is -- let me just ask them one at a time.  Can you tell me when that well was completed?**
> A   No.
> **Q   Can you tell me what entity you believe completed that well?**
> A   A Sun related entry.
> **Q   Can you tell me which one?**
> A   No.
> **Q   Can you tell me who made the decisions as to what's a Sun related entity?**
> A   I did.
> **Q   And you then matched what you decided was a Sun related entity to your database?**
> A   I used the names in the database to determine, based on my general knowledge of the industry, what a Sun related entity was.

*Id.* at p. 193, ll. 7-23. Fisher's opinion relies on his "general knowledge of the industry." As shown by the undisputed material facts, Fisher's general knowledge is

insufficient for purposes of determining Sunoco's relationship to the allegations of the Second Amended Complaint.

### 2. The "Sunoco storage tank" is not property of Sunoco

Plaintiffs cite to a storage tank as evidence of Sunoco's exploration or production. (*See* photograph attached as exhibit to Fisher Report) (Exhibit 4); *see also* Sublette Report at table, line 14) (Exhibit 5). The name "Sunoco" and a logo are painted on the tank in question. This labeling of the tank does not establish Sunoco's ownership or control of the tank.

Because Sunoco's business does not include exploration and production, it does not own exploration equipment or production-related storage tanks in Oklahoma. Haines Aff., ¶¶ 2; 4-5.[1]

Production can be identified as being contracted to a particular transport company by that transport company's name and other information being posted or painted on a storage tank. This information enables truck drivers to prepare chain of custody records when they remove oil from the tanks. The posting of information on a tank does not reflect ownership or operation of the land, the lease, or the tanks where production occurs. Haines Aff., ¶ 7.

The photographs attached to the Fisher expert report show storage tanks labeled "Stuart North." These tanks are mentioned in the Sublette Report at table, line 14.

---

[1] Sunoco owns and operates a refinery at 1700 South Union Avenue in Tulsa. As part of its refining plant, Sunoco maintains storage tanks. These tanks are unrelated to any exploration or production activity, however, and Sunoco's Tulsa refinery is not cited by Plaintiff as the source of any alleged pollution.

(Exhibit 5) The tanks are described as "Stuart Tank Battery," ½ mile east of an intersection that is southwest of the town of Avant. *Id.*

Sunoco does not own or operate the land, storage tanks, or any other aspect of the property depicted in the photographs. Haines Aff., ¶¶ 8-9. The logo of Sunoco Logistics Partners, LP, is on one of the storage tanks. The pictured tank also shows the property number of the lease, the tank number, the tank height, the draw height, and the Oklahoma Tax Commission number for Sunoco Logistics Partners, LP. Neither Sunoco nor Sunoco Logistics Partners, LP, owns or operates the pictured property. Haines Aff., ¶ 10.

## B.     SUNOCO IS NOT A PROPER DEFENDANT BECAUSE IT HAS NO LEGAL RESPONSIBILITY FOR CLAIMS ARISING OUT OF EXPLORATION AND/OR PRODUCTION ACTIVITIES

### 1.     SUNOCO CANNOT HAVE CAUSED PLAINTIFF ANY HARM SINCE 1988

Plaintiff complains generally that Sunoco explored or produced natural resources in some manner that harmed his property. Second Amended Complaint at ¶¶ 31-35, 38-43, 53. It is an uncontroverted fact that Sunoco has not produced oil or gas in the United States since 1988, when Sun E&P became an independent company. Thus, Sunoco cannot have caused any harm to Plaintiff since 1998.

### 2. SUNOCO IS NOT THE CORRRECT DEFENDANT FOR ANY HARM ALLEGED BY PLAINTIFF BEFORE 1988

Plaintiff complains that Sunoco explored or produced oil and/or gas at times prior to 1998. In stating these claims against Sun, Plaintiff fails to recognize the legal effect of the independence of Sun E&P in 1988. This transaction was not

simply an asset acquisition. Sun E&P was a fully-capitalized corporation listed on the New York Stock Exchange.

The terms by which Sun E&P became an independent corporation were set out in the Distribution Agreement dated October 7, 1988 between Sun Exploration & Production Company, a Delaware corporation, and managing general partner of Sun Energy Partners, L.P. and Sun Company, Inc, a Pennsylvania corporation. This Agreement established that Sun E&P was responsible for both the assets and the liabilities of its operations.

Federal and state courts have recognized that Oryx is the proper defendant when plaintiffs assert claims implicating Sun E&P or other Sun entities. *See, e.g.*, *Murphy Exploration & Production Company v. Oryx Energy Company*, 96-1108 (Fed. Cir. 1996) (Exhibit 9); *Pinder v. Chester Henry Boats*, 1992 WL 73361 (E.D. La.) (Exhibit 10); *Sprowls v. Oryx Energy Company, successor by merger to Sun Exploration and Production*, 2 F.3d 138 (Table), 1995 WL 752681 (10th Cir.) (Exhibit 11); *Hails v. Sun Oil Co.*, 653 So.2d 851, fn. 2 (La. App. 1 Cir.1995) (*"Oryx Energy Corporation was formerly Sun Exploration and Production Company, Inc. The trial court dismissed Sun Oil Company, Sun Exploration and Production Co., Inc., and Sun Operating Limited Partnership with prejudice without objection from plaintiff."*); *Oryx Energy Co. v. Shelton*, 942 S.W.2d 637, 640, 643 (Tex. App. Tyler 1996) (plaintiff's pollution claims against Oryx as related to conduct involving predecessor Sun dating back to 1950's properly stated against Oryx).

Judicial findings as to the successorship of Oryx Energy to Sun E&P are consistent with the law of corporate successorship. When all of the stock of a corporation is purchased, the assets and liabilities of the corporation are conveyed in the transaction.

> ...[W]here a corporation is acquired through the purchase of all of its outstanding stock, the corporate entity remains intact and retains its liabilities, despite the change of ownership. "Changes in ownership of a corporation's stock will not affect the rights and obligations of the company itself. The corporation survives as an entity separate and distinct from its shareholders even if all the stock is purchased by another corporation."

*GRM Industries, Inc. v. Wickes Mfg. Co.*, 749 F. Supp. 810, 814 (W.D. Mich. 1990) quoting *Smith Land & Imp. Corp. v. Celotex Corp.*, 851 F.2d 86, 91 (3rd Cir. 1986). "Liability continues because the corporate body itself survives." *Polius v. Clark Equipment Co.*, 802 F.2d 75, 77 (3rd Cir. 1986). Oklahoma's General Corporation Act recognizes the basic principle that a change of ownership of a corporation does not relieve the corporation of its "debts, liabilities and duties." 18 O.S. § 1088.[2]

Here, all of the stock of Sun E&P was conveyed from Sunoco to Sun's shareholders, who held Sun E&P as a separate company. Sun E&P promptly

---

[2] Even when a company simply sells assets and not all of its capital stock, liabilities associated with those assets transfer from the seller to the buyer when, for example, the circumstances surrounding the transaction warrant a finding that there was a consolidation or merger of the corporation, or where the purchasing corporation was a "mere continuation" of the selling company. *See Goucher v. Parmac, Inc.*, 694 P.2d 953; *Thomas v. New England Firearms Co., Inc.*, 37 F.3d 1510, (10th Cir. 1994) (applying Oklahoma law), *Flores v. U.S. Repeating Arms Co., Inc.*, 19 Fed. Appx. 795, (10th Cir. 2001) (applying Oklahoma law), *Pulis v. United States Elec. Tool Co.*, 1997 OK 36, 561 P.2d 68 (Okla. 1977).

renamed itself Oryx Energy and continued the business that it had always done: exploration and production of natural resources.[3]

## CONCLUSION

Plaintiff has no evidence that Sunoco was the cause of any harm to Plaintiff. The photographs that Plaintiff believes to be evidence of a Sunoco storage tank are photographs of someone else's storage tank.

Even if Plaintiff did have evidence of historical exploration or production by Sunoco, and even if that evidence included evidence of some sort of pollution, Sunoco would not be a part to this lawsuit because those operations would be the history of a different company – one that Plaintiff has chosen not to name in this lawsuit. Summary judgment should issue.

Respectfully submitted,

RHODES, HIERONYMUS, JONES, TUCKER
& GABLE, P.L.L.C.

BY:    s/ Colin H. Tucker
       JOHN H. TUCKER, OBA #9110
       COLIN H. TUCKER, OBA #16325
       100 W. Fifth Street, Suite 400 (74103-4287)
       P.O. Box 21100
       Tulsa, Oklahoma 74121-1100
       Telephone:   918/582-1173
       Facsimile:   918/592-3390
       ATTORNEYS FOR DEFENDANT,
       SUNOCO, INC.

---

[3] Oryx Energy Company was acquired by and merged into Kerr-McGee Corporation in 1999. Federal courts have recognized that Kerr-McGee Corporation is the successor to Oryx Energy, and that Kerr-McGee is responsible for actions that would lie against Oryx Energy. *See, e.g., Comstock Oil & Gas Inc. v. Alabama and Coushatta Indian Tribes of Texas*, 275 F.3d 108, fn. 1 (5th Cir. 2001), *reh'g denied*, 261 F.3d 567 (2001), *cert. denied*, 535 U.S. 971, 122 S.Ct. 1438 (2002) (finding Kerr-McGee Corporation is the successor to Oryx Energy Company).

Plaintiff has tacitly acknowledged the possibility of this fact of succession as shown by his subpoena duces tecum issued to Kerr-McGee on May 15, 2006. (Exhibit 12)

CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2006, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

COUNSEL FOR PLAINTIFFS:
Wilfred K. Wright, Jr.
Aamodt & Wright, PC
401 S. Boston Ave. Ste. 1717
Tulsa, OK 74102

COUNSEL FOR BUREAU OF INDIAN AFFAIRS:
Thomas Scott Woodward
United States Attorney
Cathryn Dawn McClanahan
Assistant United States Attorney
333 W. 4th Street, Suite 3460
Tulsa, OK  74103

COUNSEL FOR PHILLIPS PETROLEUM COMPANY:
Lloyd W. Landreth
Landreth Law Firm
801 East B Street
Jenks, OK 74037-4307

        and

Maria Dunn
Senior Counsel
ConocoPhillips Company
600 North Dairy Ashford, Suite 1044
Houston, TX 77079

COUNSEL FOR LITTLE RIVER ENERGY CO. , YARHOLA PRODUCTION CO. AND SPESS OIL CO.:
Lee I. Levinson
Rick D. Westcott
Bodenhamer & Levinson
1743 E. 71st Street
Tulsa, OK 74136-5108

17

COUNSEL FOR GETTY OIL CO. AND TEXACO INC.:
Ronald N. Ricketts
Mia Vahlberg
Gable& Gotwals
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK  74103-4217

       I hereby certify that on July 7, 2006, I served the foregoing document by U.S. Mail on the following, who are not registered participants of the ECF System:

COUNSEL FOR UNITED STATES OF AMERICA:
Natalia Sorgente
Environmental Defense Section
U.S. Department of Justice
P.O. Box 23986
Washington, DC 20026-3986

s/ Colin H. Tucker