UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DON QUARLES, an individual; )
and QUARLES ACRES, LLC, )
 )
      **Plaintiffs,** )
 )
v. ) Case No. 00-CV-0913-CVE-PJC
 )
UNITED STATES OF AMERICA, )
ex rel. BUREAU OF INDIAN AFFAIRS; )
et al.,[1] )
 )
      **Defendants.** )

## OPINION AND ORDER

Now before the Court is the Motion to Dismiss of Defendant, The Link Oil Company, Inc. ("Link") (Dkt. # 194).

### I.

Plaintiff Don Quarles filed this action as a putative class action against the United States and various oil company defendants, alleging that the oil companies' production activities in Osage County, Oklahoma had contaminated and polluted the land, water, and natural resources of the county. Quarles based his complaint on various statutory and common law violations. Several defendants filed motions to dismiss, and this Court adopted the recommendation of the magistrate judge recommending dismissal based on Quarles' failure to exhaust administrative remedies as required by federal regulations, 25 C.F.R. Part 226, Leasing of Osage Reservation Lands for Oil and Gas Mining, and the statute under which the regulations were promulgated, the Osage Allotment Act of 1906, as amended by Section 2 of the Act of March 2, 1929 (45 Stat. 1478, 1479) ("Act").

---

[1] Plaintiff's claims against the United States have been dismissed and the plaintiff has withdrawn his motion for class certification. For docketing purposes, the caption has been altered only to show the change in plaintiffs.

Plaintiff appealed, and the United States Court of Appeals for the Tenth Circuit reversed this Court's decision. Quarles v. United States ex rel. Bureau of Indian Affairs, 372 F.3d 1169, 1170-71 (10th Cir. 2004) (footnotes omitted). The Tenth Circuit held that the arbitration requirement (§ 2) in the Osage Allotment Act applied only to claims "arising under" the Act. Id. at 1173. In so holding, the Circuit stated that Quarles raised none of his claims under § 2 of the Act, that the Court failed to "explain how or why any of the numerous claims 'ar[ose] under' the Act," and that it disagreed with the Court's finding that the Act "blankets all of Quarles' varied claims." Id.

After remand, plaintiffs Don Quarles and Quarles Acres, LLC, filed the Second Amended Complaint naming Link, among others. Link leased and drilled on two leases subsequent to the initiation of this litigation and prior to the Second Amended Complaint. Link alleges that plaintiffs refused to accept proffered compensation for use and damages and demanded arbitration in accordance with the Act and applicable regulations. Three arbitrators issued a final arbitration report, awarding use compensation and damages to plaintiffs. Link tendered payment but, instead of accepting payment, plaintiffs filed suit in Osage County appealing the award. Plaintiffs dismissed the appeal before trial, and defendant paid the arbitration award with interest as prescribed by regulation. Plaintiffs then joined Link in this lawsuit. Plaintiffs alleged that "the amount suggested by the arbitrators was inadequate to reasonabl[y] compensate Quarles." Second Amended Complaint, Dkt. # 182, at ¶ 215.

Link argues that all of plaintiffs' claims against it are foreclosed by the final decision of the arbitrators, as plaintiffs dismissed their appeal of the arbitral award and failed to file their Second Amended Complaint within the 90-day appeal period prescribed by 25 C.F.R. § 226.21 and § 2 of the Act. Link points out that count XV (location and use compensation) of the Second Amended

2

Complaint is against Link alone and no other defendant, but plaintiffs failed to identify Link as an "oil company Defendant" against whom the allegations in counts VIII - XIV[2] apply. Nonetheless, Link assumes that counts VIII through XIV were intended to apply to it and argues that those claims were "embodied in its arbitrated Section 2 claims and should be dismissed." Link also argues that the statutory violation claims asserted in counts VI and VII should be dismissed because plaintiffs did not provide notice to Link as required by the applicable statutes.

The legal basis for Link's motion to dismiss is not entirely clear. Link asserts that its motion is based on Fed. R. Civ. P. 12(b)(1) and 12(b)(2), stating that the Court lacks subject matter jurisdiction and that plaintiffs have failed to state a claim upon which relief can be awarded. Of course, Rule 12(b)(2) sets forth a defense based upon lack of jurisdiction over the person, and a defense based on failure to state a claim is a Rule 12(b)(6) defense. While the content of Link's briefing on this issue leads the Court to understand Link's motion to be based solely on lack of subject matter jurisdiction, the Court, in an abundance of caution, sets forth the standard of review for all three bases.

**II.**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court must determine whether the plaintiff can establish that the Court has subject matter jurisdiction over the defendant. Rule 12(b)(1) motions can take the form of a facial attack, whereby "the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true," or the form of a factual attack, whereby "the movant goes beyond the allegations in the

---

[2]   Count VIII is based on 33 U.S.C. § 2702 of the Oil Pollution Act of 1990; count IX is for private nuisance; count X is for public nuisance; count XI is for negligence; count XII is for trespass; count XIII is for unjust enrichment; and count XIV is for punitive damages.

3

complaint and challenges the facts upon which subject matter jurisdiction depends." Paper, Allied-Industrial, Chemical and Energy Workers Intern. Union v. Continental Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005) (citation omitted).  Link's motion is in the form of a facial attack.

"When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted).  Plaintiffs have alleged that Link Oil is a corporation in good standing with the office of the Secretary of the State of Oklahoma, that Link conducts business in Osage County and throughout the entire state, and that Link is a current operator on plaintiffs properties.  Link does not deny this allegation.  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).  It is not clear how the considerations set forth in Link's motion to dismiss would entitle Link to dismissal on personal jurisdiction grounds.

A motion to dismiss based on Fed. R. Civ. P. 12(b)(6) for failure to state a claim is properly granted when it appears beyond doubt that the plaintiff could prove no set of facts entitling him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Yanaki v. Iomed, Inc., 415 F.3d 1204, 1207 (10th Cir. 2005). When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the nonmoving party.  E.g., Yanaki, 415 F.3d at 1207.  However, the Court need not accept as true those allegations that are conclusory in nature. Erikson

4

v. Pawnee County Board of County Commissioners, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah State School for the Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991)). For the reasons set forth herein, plaintiffs have not failed to state a claim against Link.

### III.

Plaintiffs allege that Link is a current operator and successor to previous mineral lessees on Quarles' property and, as such, Link is liable for all of the pollution on Link's current mineral lease because it failed to abate or remediate the same. Plaintiffs' response to Link's motion indicates that, although they specifically named Link only in count XV (location and use compensation) of the Second Amended Complaint, they intended to identify Link as an "oil company Defendant" against whom the allegations in counts VIII - XIV apply. Link's argument that those claims were "embodied in its arbitrated Section 2 claims and should be dismissed" is foreclosed by the Tenth Circuit's decision in Quarles v. United States ex rel. Bureau of Indian Affairs, 372 F.3d 1169 (10th Cir. 2004). The Court reads the Quarles decision of the Tenth Circuit to mean that, regardless of the underlying factual allegations, a plaintiff must specifically reference and base its claim for relief on section 2 of the Act for any claim to "arise under" thereunder and, hence, for the arbitration provision to apply. Counsel for plaintiffs were careful not to mention section 2 of the Osage Allotment Act in the Complaint or the Second Amended Complaint. Link's motion to dismiss counts VIII-XIV should be denied.

Nonetheless, plaintiffs arbitrated their dispute (embodied in count XV of the Second Amended Complaint) with Link over damages for diminished value and use compensation allegedly associated with production activities on plaintiffs' property. Plaintiffs' demand for and participation in arbitration with Link is an admission on plaintiffs' part that plaintiffs' damages arose under section 2 of the Osage Allotment Act as they accrued "as a result of the use of [plaintiffs'] land for oil or gas mining purposes, or out of damages to the land . . . occasioned thereby. . . ." 34 Stat. 539, as amended by Act of March 2, 1929, ch. 493, § 2, 41 Stat. 1249. The issue is whether dismissal is warranted because, although plaintiffs filed it in state court 90 days from the date of the decision, they dismissed it and refiled in federal court outside of the 90-day period.

Section 2 of the Act states that the "appeal herein authorized shall consist of filing an original action in any court of competent jurisdiction sitting at the county seat of Osage County, . . . " 34 Stat. 539, as amended by Act of March 2, 1929, ch. 493, § 2, 41 Stat. 1249. However, it also says, "Provided, That nothing herein contained shall preclude the institution of any such suit in a Federal court having jurisdiction thereof, or the removal to said court of any such suit brought in the State court, which under Federal law may be removed to the Federal court . . . ." Id. Further, the implementing regulations state "Each party shall have 90 days from the date the decision is served in which to file an action in a court of competent jurisdiction" without reference to the county seat of Osage County. 25 C.F.R. § 226.21(f). This language, like the language of the statute, does not specifically address the situation created by plaintiffs' dismissal of the suit in state court and refiling in federal court.

Plaintiffs point out that Oklahoma rules permit a plaintiff to dismiss his case and re-file it within one year. See Okla. Stat. tit. 12, §§ 100.[3] They dismissed in state court on February 2, 2006, and filed their Second Amended Complaint naming Link in this litigation on February 23, 2006. Link argues that the tolling or saving provision of Okla. Stat. tit. 12, § 100 does not apply to the specific statutory provision in the Osage Allotment Act prescribing a specific time limitation as a condition precedent to the bringing of an action. Link bases its arguments on Matter of Estate of Speake, 1987 OK 61, 743 P.2d 648; Neer v. State ex rel. Oklahoma Tax Comm'n, 1999 OK 41, 982 P.2d 1071; Partee v. St. Louis & S.F.R. Co., 204 F. 970, 972-73 (8th Cir. 1913) (reviewing a decision of the Eastern District of Oklahoma), and Amoco Prod. Co. v. Newton Sheep Co., 85 F.3d 1464 (10th Cir. 1996). However, Link has honored its duty of candor with the tribunal by drawing the Court's attention to a conflicting case in which the Oklahoma Supreme Court held that the recommencement tolling statute would apply to a governmental tort claim timely filed, but dismissed and later refiled. Cruse v. Board of County Comm'rs of Atoka County, 1995 OK 143, 910 P.2d 998. The five justice majority in Cruse reasoned, in part, that the Governmental Tort Claims Act (Okla. Stat. tit. 51, § 151 et seq.) did not specifically exclude the application of Okla. Stat. tit. 12, § 100. Id. at 1005.

Link attempts to distinguish Cruse by reference to differences in a statute of limitation, which "extinguishes a remedy for an existing right," and a statute of repose, which "marks the boundary

---

[3]   Okla. Stat. tit. 12, § 100 provides, in relevant part:

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff . . . may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

of a substantive right." Neer, 982 Pl2d at 1078-79; see Amoco, 85 F.3d at 1472. "The time prescribed by a statute of repose runs from a specific . . . event regardless of when the harm or damage occurs. A limitation period runs from the time the elements of a cause of action arise." Id. (quoting Reynolds v. Porter, 1988 OK 88, 760 P.2d 816, 820).  Accordingly, Link argues that a statute of limitation, like Okla. Stat. tit. 12, § 100, is not applicable to toll a statute of repose like that found in section 2 of the Osage Allotment Act.  See Matter of Estate of Speake, 743 P.2d at 652-53 (explaining the "general/special time limitation dichotomy" and the difference between time limitations that bar a remedy and those that bar a right by comparing Okla. Stat. tit. 12, § 100 with Okla. Stat. tit. 58, § 67).  The Court finds merit in this argument, as it appears that the holding in Cruse is limited to the state governmental tort claims context.

Yet, none of the cases cited by Link involved application of section 100 in light of a time limitation set forth in a federal statute.  In holding that Okla. Stat. tit. 12, § 100 does not operate to save an untimely Title VII claim, the Tenth Circuit has stated: "When Congress has provided a federal statute of limitation for a federal claim, however, state tolling and saving provisions are not applicable."  Brown v. Hartshorne Pub. Sch. Dist. No. 1, 926 F.2d 959, 961 (10th Cir. 1991). Similarly, in Pipkin v. U.S. Postal Serv., 951 F.2d 272 (10th Cir. 1991), the Tenth Circuit held that Okla. Stat. tit. 12, § 100 did not enlarge the time provided by Congress for filing a claim under the Federal Tort Claims Act.  Id. at 275.  The Pipkin court observed: "The general rule is that a court looks to state law to define the time limitation applicable to a federal claim only when Congress has failed to provide a statute of limitations for a federal cause of action." Id. at 274 (citation and internal quotation omitted).  There is no such failure here.

The Osage Allotment Act grants a surface owner or lessee the right to appeal an award to or against him after arbitration of claims for damages arising under section 2 of the Act, but he must do so within ninety days. 34 Stat. 439, as amended by Act of March 2, 1929, ch. 493, § 2, 41 Stat. 1249. It is undisputed that the final arbitration report was rendered on February 9, 2005, and the plaintiffs filed suit in Osage County eighty-nine days later, on May 9, 2005. They voluntarily dismissed on February 2, 2006 and refiled in federal court on February 23, 2006, apparently relying on the Oklahoma savings statute. Yet, Brown and Pipkin dictate that Okla. Stat. tit. 12, § 100 does not apply to toll a federal statute of limitation for a federal claim. Count XV is barred by the statute of limitation set forth in section 2 of the Osage Allotment Act.

Finally, Link argues that any claim against it under counts VI and VII should be dismissed. These counts constitute plaintiffs' claims for citizen suit injunctive relief under section 1365 of the Clean Water Act (CWA), 33 U.S.C. § 1251, et seq., and section 9659 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq. Link asserts that plaintiffs failed provide the requisite 60-day notice to Link, that no discharge or effluent has been identified from the arbitration or appeal, and that plaintiffs have not identified any effluent or discharge regulation violated by Link. Plaintiffs did not respond to these contentions, but the Court finds that they are inappropriate for determination on a motion to dismiss because the Court is obligated to accept all the allegations of the complaint as true. If discovery should reveal that the allegations are not true, Link may reurge this argument in a motion for summary judgment, where the Court will study the record to determine whether Link is entitled to judgment as a matter of law.

9

Accordingly, the Motion to Dismiss of Defendant, The Link Oil Company, Inc. ("Link") (Dkt. # 194) is hereby **granted in part and denied in part**: the allegations of the Second Amended Complaint against Link set forth in count XV are dismissed; the allegations against Link set forth in counts VI - XIV remain.

**IT IS SO ORDERED** this 24th day of July, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT