# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DON QUARLES, an Individual; on behalf of himself and all others similarly situated,<br>    Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, *ex. rel.*<br>*BUREAU OF INDIAN AFFAIRS, et al.*<br>    Defendants. | Case No.   00-CV-913-EA(J) |

## DEFENDANTS' MOTION TO STRIKE SUPPLEMENTAL EXPERT REPORT OF J. BERTON FISHER AND BRIEF IN SUPPORT

Defendants, Texaco Inc., Getty Oil Company, Conoco Phillips, Sun Oil Company, Tony Oil Company, Link Oil Company, Spess Oil Company, Little River Energy Company, and Yarhola Production Company (collectively, "Defendants") move to strike the "supplemental" expert report of Plaintiffs' expert, J. Berton Fisher, as submitted to Defendants on November 7, 2006 -- roughly six months after the May 19, 2006, deadline for reports.

Until the arrival of this supplemental report, Dr. Fisher's opinions rested primarily on data collected by the United States Geological Survey ("USGS") in a series of reports it issued about impacts of historic oil production in Osage County.[1] Dr. Fisher had not conducted any independent sampling of Plaintiffs' property.[2] Dr. Fisher's November 7, 2006 report is not "supplemental in any sense." This report advances a new body of theories and hypotheses based on previously undisclosed methodologies and data.[3]

Plaintiffs did not seek Court permission to reopen expert discovery – in fact, they opposed any further expert discovery. At a hearing on October 19, 2006, Plaintiff's counsel

---

[1] See Exhibit A, May 30, 2006 Report of J. Berton Fisher, pp. 6-14.

[2] See Exhibit B, May 10, 2005 deposition of J. Berton Fisher, pp. 84, 174-175.

[3] See Exhibit C, November 7, 2006 Supplemental Report of J. Berton Fisher.

{626510;}

represented that there was no need for Defendants to take a second deposition of Dr. Fisher because he had "no new information" to offer [4] – even though Dr. Fisher was in the process of conducting sampling operations on Quarles' property *at that very moment.*[5]

Defendants prepared this case for trial, through six years of discovery, with the understanding that Plaintiffs had not sampled. Thus, the lawsuit that was nearing trial now has been reset, by Plaintiffs, to square one. Adding prejudice upon prejudice, Plaintiffs conducted a clandestine sampling program, giving Defendants no opportunity to monitor sampling protocols or to obtain split samples for independent laboratory analysis.

Admission of this report will incurably prejudice the Defendants. Defendants ask the Court to strike the supplemental report and disallow any testimony or exhibits regarding the results of covert sampling done by Dr. Fisher in October, 2006.

**Background**

1. This case was first filed by Plaintiffs on October 24, 2000. (Dkt. 1) On June 25, 2001, Plaintiffs amended their Complaint to include class allegations. On February 6, 2006, after almost five years, Plaintiffs withdrew their class claims (Dkt. 176) and amended their Complaint, adding two new defendants and two new legal theories. (Dkt. 182).

2. On February 13, 2006, the Court entered a scheduling order that established May 19, 2006 as the deadline for Plaintiffs' expert reports. (Dkt. 180).

3. Plaintiffs subsequently submitted two expert reports – one from Dr. Kerry Sublette and one from Dr. J. Bert Fisher. Plaintiffs did not submit Dr. Fisher's report until June 1, 2006, twelve days after the court-ordered deadline. Although Plaintiffs' counsel contacted Defendants to advise that the report would be late and Defendants did not object, Plaintiffs did not take the required step of seeking leave of Court to file a late expert report.

---

[4] See Exhibit D, Dkt # 251, pp. 3-4.

[5] See Ex. C, p. 3.

{626510;}　　　　　　　　　　　　　2

4. In September, 2006, Defendants sought to schedule the depositions of Mr. Quarles and of Plaintiffs' two experts. Plaintiffs refused to present either Mr. Quarles or Dr. Fisher, stating that because there was no new information to be discovered there was no need to take a second deposition. (Both Mr. Quarles and Dr. Fisher had been deposed during class certification discovery). Consequently, on October 6, 2006, Defendant's filed a Motion for Leave to Take Second Depositions. (Dkt. 244).

5. On October 12, 2006, Plaintiffs' expert, Dr. J. Bert Fisher, began taking soil samples and performing conductivity surveys on Quarles' property – unbeknownst to the Defendants.[6]

6. On October 17, 2006, Plaintiffs filed a Response in Opposition to Defendants' Motion for Leave, arguing, *inter alia,* that

> **Defendants have already completed their right to a discovery deposition and a second deposition of Fisher and Quarles would be cumulative, duplicative and totally without merit. . . . <u>Defendants' arguments and rationale are disingenuous and without merit to re-depose Dr. Fisher. . . . No additional discovery has been obtained since the submission of the [sic] Fisher's first report in 2005.</u> Lastly, Fisher's 2006 expert report speaks for itself. … As an expert, Fisher's time is valuable and his schedule would have to be altered to accommodate the Defendants unsupportable request.**

(Dkt. 251, pp. 3-4) (emphasis added)[7].

7. At the October 19, 2006 hearing before Magistrate Judge Cleary on Defendants' Motion for Leave to Take Second Depositions (Dkt. 254), Plaintiffs never revealed the fact that Dr. Fisher was, at that very moment, conducting sampling on Quarles' property and that a supplemental report was not only anticipated but presently being drafted. Plaintiffs' counsel argued vehemently that there was no need for a second deposition of Dr. Fisher. During the

---

[6] *See* Ex. C., p. 3.

[7] *See* Ex. D.

{626510;} 3

hearing Defendants noted the fact that Plaintiffs never had conducted any sampling to support any of their allegations – and Plaintiffs did not deny it.[8]

8.  After the Court granted Defendants' Motion for the additional depositions, the parties arrived at a schedule for depositions, which was no small feat considering the involvement of seven different defendants and four different experts.  The parties scheduled the deposition of Dr. Kerry Sublette for November 8, 2006.  Dr. Sublette's report regarding the estimated costs of remediation of Quarles' property was based largely on Dr. Fisher's opinions about the extent of oil production-related damages on Quarles' property.  Dr. Fisher's deposition was set for November 20th.

9.  At noon on November 7, 2006, one day before Sublette's scheduled deposition, Plaintiffs served Defendants with Dr. Fisher's 710-page supplemental expert report, which was based on sampling he conducted between October 9 and October 26, 2006.

## Argument and Authorities

Rules 16, 26 and 37 of the Federal Rules of Civil Procedure work in conjunction with one another to protect parties from a last minute ambush of undisclosed expert testimony.  Indeed, parties are required to disclose expert witnesses and must provide

> . . . a written report prepared . . . signed by the witness.  The report shall contain a complete statement of **all** opinions to be expressed and the basis and reasons therefore;  ***the data*** or other information considered by the witness in forming the opinions;  any exhibits to be used as a summary of or support for the opinions;  the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years;  the compensation to be paid for the study and testimony;  and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

FED.R.CIV.P. 26(a)(2)(B) (emphasis added).  Rule 26(a)(2)(B) serves the important purpose of apprising the opposing party of the views and opinions of the expert witness to aid counsel in

---

[8] A transcript of the hearing has been requested.

{626510;}  4

preparation of its case. *See Jacobsen v. Desert Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (holding that district court abused its discretion in failing to strike late-filed expert report). Furthermore, parties are required to disclose their retained experts' reports either consistent with the Rules or as ordered by the court. FED.R.CIV.P. 26(a)(2)(C).

A party to litigation may not to unilaterally amend court-issued scheduling orders by re-opening expert discovery without the Court's permission. "A scheduling order should not be modified *except upon a showing of good cause and by leave of the district judge* or, when authorized by local rule, by a magistrate judge." Fed. R. Civ. P. 16 (b) (emphasis added). [9]

Rule 37 provides that when a party fails, without substantial justification, to timely disclose an expert's opinion as required by Rule 26(a) or 26(e)(1), he shall not, unless such failure is harmless, be "permitted to use that evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED.R.CIV.P. 37(c)(1). "Thus, a party who submits an incomplete initial expert report may suffer the exclusion of any additional testimony contained in a supplemental report." *Falconcrest Aviation, LLC v. BizJet Int'l Sales & Support, Inc.*, 2006

---

[9] Here, Plaintiffs did not seek to amend the Scheduling Order. In the Tenth Circuit, a scheduling order may only be modified when the requesting party demonstrates that it was diligent in seeking discovery but could not meet the deadline:
> In order for expert disclosures and related discovery to be reopened [the requesting party] must show good cause to amend the discovery deadlines. . . **Good cause in this context requires a showing, among other things, that the party seeking the extension was diligent in its discovery efforts yet could not complete discovery by the court-ordered deadline**. *See SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir. 1990). 'Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.'

*Marcin Engineering, LLC v. The Founders at Grizzly Ranch, LLC,* 219 F.R.D. 516 (D. Colo. 2003) (quoting *Hannah v. Roadway Exp., Inc.,* 200 F.R.D. 651, 653 (D. Colo. 2001). Plaintiffs were hardly diligent in gathering sampling despite the fact that they were repeatedly informed by Defendants and their experts about the lack of sampling data. Months ago, Defendants criticized Fisher's opinions for their lack of a sampling foundation:, "Dr. Fisher has not personally made any attempt to even view the 'parcels' which are the subject of this lawsuit, nor has Dr. Fisher engaged in direct investigation or sampling of soils or water on *any* property in Osage County as Plaintiff's expert in this case." Defendants' Brief in Opposition to Plaintiff's Motion and Brief in Support for Class Certification (Dkt. #151)

WL 1266447 at *1 (N.D. Okla. May 3, 2006)[10] (citing *Anderson v. Hale*, 2002 WL 32026151, at *2 (W.D. Okla. Nov. 4, 2002). "[T]he combined effect of Rule 26(a)(2)(B) and 37(c)(1) is that he who fails to provide a comprehensive expert report does so at his own peril." *Id.* (quoting *Anderson*, 2002 WL 32026151, at *2).

Whether a failure to disclose required expert testimony is a "harmless omission" is a determination guided by four factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Falconcrest*, 2006 WL 1266447, at *2; *Jacobsen*, 287 F.3d at 953; *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

Plaintiffs' late disclosure of Fisher's "supplemental" report is not a harmless omission. It is not "harmless" because this new report relies on entirely new methods and data. The accuracy of Fisher's methods and data cannot be tested because Fisher collected the data without notice to Defendants.

Nor does the supplemental report correct an omission. Throughout his involvement in this case, Fisher relied exclusively upon USGS data. Data and analysis from sampling was not inadvertently omitted or overlooked in his 2006 report. It was a deliberate strategy. Plaintiffs' attempt to pursue a new strategy will cause harm and should be precluded.

**1. The Defendants are Prejudiced by Fisher's Supplemental Opinion**

Defendants are prejudiced by Plaintiffs' conduct. Defendants prepared their cases based upon the evidence presented by Mr. Fisher in his prior two reports. Defendants retained experts, and those experts presented opinions, based upon the evidence adduced by Plaintiffs through

---
[10] Attached as Exhibit F.

Fisher. Defendants prepared to defend the case as presented by Plaintiffs and not the brand new case offered up in Fisher's so-called supplemental report.

The Fisher "supplement" comes in the shadow of the discovery cutoff on November 27, 2006 and the deadline for dispositive motions on December 18, 2006. Defendants must now conduct their own sampling in order to rebut Fisher's opinions; however, a sampling protocol in a pollution case is not designed overnight.

If Defendants had known that Plaintiffs planned to sample, they would have constructed an entirely different discovery plan. Allowing Plaintiffs to rely on this new report will compel Defendants to go back to the drawing board, to conduct their own sampling, and to retain additional experts. At best, additional reports and depositions will be necessary, at significant expense. If the supplemental report is allowed to stand, the time and money already spent on the rebuttal opinions of Defendants' experts was wasted.

**2. The Prejudice Suffered By Defendants Cannot Be Cured**

As discussed above, Defendants have been seriously prejudiced by the untimely introduction of the supplemental report. If discovery is extended to allow for additional experts, sampling, reports, depositions and the like, Defendants will have spent six years defending a case that essentially no longer exists. Defendants and the Court will be starting from scratch. A sanction to reimburse Defendants for their now-moot expert expenses would cure only one aspect of the prejudice. To reward Plaintiffs by allowing the supplemental report would undercut the letter and purpose of the Rules of Civil Procedure.

**3. The Trial Will Be Disrupted If the Supplemental Report is Not Stricken**

The case is specially set on March 26, 2007. During this time when Defendants should be preparing for trial, Defendants will be required to launch a crash program of sampling and analysis. At minimum, supplemental reports will be prepared, new depositions taken, and

preparations made for a completely different case than that in the pipeline since 2000. To require this effort to begin and end only four months before trial will cause disruptions to the trial preparation of the parties and the Court, and of the trial itself.

### 4. Plaintiff's Conduct Constitutes Bad Faith

This situation is exclusively of Plaintiffs' making.

- Plaintiffs failed to even take the required first step of asking the Court for permission before unilaterally re-opening expert discovery;

- Plaintiffs chose to "re-open" expert discovery when they authorized Dr. Fisher to begin collecting field samples on October 12, 2006;

- Plaintiffs did not advise the Court or Defendants of the sampling activities, to allow for monitoring and verification of procedures and protocols implemented by Dr. Fisher, and to provide for split samples;

- Plaintiffs affirmatively misled Defendants and the Court when, in their Response to Defendants' Motion for Leave to Take Second Depositions, and at the hearing on October 19, 2006, well after the point in time when Plaintiffs had authorized Dr. Fisher to go out and create sampling data, Plaintiffs argued that:

> **Defendants have already completed their right to a discovery deposition and a second deposition of Fisher and Quarles would be cumulative, duplicative and totally without merit. . . . <u>Defendants' arguments and rationale are disingenuous and without merit to re-depose Dr. Fisher. . . .No additional discovery has been obtained since the submission of the [sic] Fisher's first report in 2005.</u>**

(Dkt. 251, pp. 3-4) (emphasis added).

Plaintiffs first filed this case in 2000. They have had *six years* to gather evidence and conduct sampling on their own property to support their allegations of oil production related pollution and damages. But Plaintiffs chose not to do that. Instead, Plaintiffs relied exclusively

on their expert's extrapolations of the research and sampling conducted by the USGS -- sampling not conducted on any of the property owned by Plaintiffs.

The rebuttal reports issued by Defendants' experts in September, 2006, highlighted this serious deficiency in Plaintiffs' proof.[11] The dispositive motions filed in July and October, 2006, by Sun Oil and Tony Oil (Dkts. 229, 246) combined those factual criticisms with case law to imperil Plaintiffs' entire lawsuit. Despite all of this notice, Plaintiffs and their expert chose to "stay the course."

That Plaintiffs' failed to timely develop evidence to support their claims is no reason for this Court to grant any sort of extension or to allow this late-filed expert report. To wait until this juncture of the case to conduct secret sampling and then to drop an entirely new 710-page report and analysis on Defendants on the eve of discovery cutoff, is definitive of bad faith, reflecting Plaintiff's counsel's decision to conduct case preparations outside the bounds of established pretrial procedure and the rules and orders of this Court.

## Conclusion

Since 2000, Plaintiffs have maintained the Defendants are responsible for damage to the Quarles' property. Plaintiffs' expert J. Berton Fisher already has submitted two reports, which, under the mandates of Rules 16 and 26, were supposed to be complete. Nonetheless, six years later and less than a month before the close of discovery, Fisher has taken samples that could have been taken in 1999, Fisher's new report addresses his sampling as well as new opinions based upon that sampling.

Plaintiffs belatedly realized that the evidence supporting their claims is insufficient. This new Fisher report is akin to the manufacturing of an affidavit in an effort to avoid a motion for summary judgment. Plaintiffs should not be rewarded by allowing the supplemental expert

---

[11] See Exhibit E, September 18, 2006 Expert Report of Lloyd Deuel, p. 10.

{626510;}                                                      9

report to stand. Defendants have been irreparably and incurably prejudiced by Plaintiffs conduct.

The Court should strike Plaintiffs' so-called supplemental expert report of J. Berton Fisher and disallow any related testimony or exhibits.

Dated this __ day of November, 2006.

    Respectfully submitted,

    *s*/Ronald N. Ricketts_____
    Ronald N. Ricketts, OBA #7563
    Mia Vahlberg, OBA #20357
    GABLEGOTWALS
    1100 ONEOK Plaza
    100 West Fifth Street
    Tulsa, OK 74103-4217
    T:  918-595-4842
    F:  918-595-4990
    rricketts@gablelaw.com
    mvahlberg@gablelaw.com
    Attorneys for Texaco Inc., Getty Oil Co.

    s/Lloyd W. Landreth_____
    *(signed with permission)*
    Lloyd W. Landreth
    Landreth Law Firm PLC
    801 East B Street
    Jenks, OK 74037-4307
    Attorneys for Phillips Petroleum Co.

    s/Colin Hampton Tucker_____
    *(signed with permission)*
    John H. Tucker
    Colin Hampton Tucker
    Theresa Noble Hill
    Rhodes Hieronymus Jones Tucker & Gable
    P.O. Box 21100
    Tulsa, OK 74121-1100
    Attorneys for Sun Oil Co.

s/ P. Scott Hathaway
P. Scott Hathaway, OBA #13695
Melinda L. Kirk, OBA #19143
CONNER & WINTERS, LLP
4000 One Williams Center
Tulsa, Oklahoma 74172-0148
(918) 586-5711; (918) 586-8547

and

Michael L. Darrah
Durbin Larimore & Bialick
920 N. Harvey
Oklahoma City, OK  73102-2610
Telephone: 405 2356 9584
Fax: 405 235-0551

Attorneys For Defendant Tony Oil Company


S/ Guy Clark
*(signed with permission)*
Guy Clark, OBA No 1698
Northcutt Clark Gardner Hron & Tate
P.O. Box 1669
Ponca City, OK  74602-1660
Telephone: 580 765 1655
Fax: 580 765 4142
Attorneys for Defendant Link Oil Co.

S/Rick Dalton Westcott
*(signed with permission)*
Rick Dalton Westcott, OBA 15872
Bodenhamer & Levinson PC
1743 E. 71st Street
Tulsa, OK  74136-5108
Telephone:  918 492 4433
Fax:  918 492 6224
Attorneys for Spess Oil Company, Little River
Energy Company and Yarhola Production Company

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2006, a true, correct and exact copy of the within document was served by placing same in the United States mail, with proper postage prepaid and affixed thereon for first-class, each addressed as follows:

| | |
|---|---|
| Gentner Frederick Drummond<br>Drummond Law Firm<br>gfd@drumlaw.com<br>Donna M. DeSimone<br>dmd@drumlaw.com<br>Aamodt & Wright, P.C.<br>wkw@awlex.com<br>*Attorneys for Don Quarles and Quarles Acres, LLC* | Micheal L. Darrah<br>Durbin, Larimore & Bialick<br>Mdarrah@dlb.net<br>Paul Scott Hathaway<br>Melinda Louise Kirk<br>shathaway@cwlaw.com<br>mkirk@cwlaw.com<br>*Attorneys for Tony Oil Co.* |
| Lloyd W. Landreth<br>Landreth Law Firm PLC<br>llandreth@landrethlaw.com<br>*Attorneys for Phillips Petroleum Co.* | Theresa Noble Hill<br>Colin Hampton Tucker<br>John H. Tucker<br>Rhodes Hieronymus Jones Tucker & Gable<br>thillcourts@rhodesokla.com<br>chtucker@rhodesokla.com<br>jtuckercourts@rhodesokla.com<br>*Attorneys for Sun Oil Co.* |
| Guy Clark<br>Northcutt, Clark, Gardner Hron & Tate<br>gclark@northcuttlawfirm.com<br>*Attorney for Link Oil Co.* | Lee Ira Levinson<br>Bodenhamer & Levinson<br>leelevinson@sbeglobal.net<br>Tulsa, OK  74136-5108<br>*Attorneys for Spess Oil Co., Inc., Little River Energy Co. and Yarhola Production Co.* |

I hereby certify that on November 14, 2006, I served the foregoing document by U.S. Postal Service on the following, who are not registered participants of the ECF System:

Alan James Oxford, II
Drummond Law Firm
1500 S. Utica Ave., Suite 400
Tulsa, OK 74104
Attorney for Don Quarles, Plaintiff

/s Ronald N. Ricketts