# EXHIBIT B

QUARLES v. USA   JOHN BERTON FISHER   May 10, 2005

### Page 1

```
 1   IN THE UNITED STATES DISTRICT COURT FOR THE
 2        NORTHERN DISTRICT OF OKLAHOMA
 3   DON QUARLES, an Individual      )
     on behalf of himself and all others )
 4   similarly situated,             )
                                     )
 5        Plaintiffs,                )
          vs.                        ) No. 00-CV-913-EA(J)
 6                                   )
     UNITED STATES OF AMERICA, ex rel. )
 7   BUREAU OF INDIAN AFFAIRS;       )
     UNITED STATES OF AMERICA, ex rel. )
 8   ENVIRONMENTAL PROTECTION        )
     AGENCY; TEXACO INC.; GETTY OIL  )
 9   CO.; PHILLIPS PETROLEUM         )
     COMPANY; SUN OIL CO.; LITTLE    )
10   RIVER ENERGY CO.; YARHOLA       )
     PRODUCTION CO.; SPESS OIL       )
11   COMPANY, INC.; CHAMBERS &       )
     HENDRIX OIL & GAS, INC.; and JOHN )
12   DOES 1-1000,                    )
                                     )
13        Defendants.                )
14        DEPOSITION OF JOHN BERTON FISHER
15        TAKEN ON BEHALF OF THE DEFENDANTS
16           ON MAY 10, 2005 AT 9:39 AM
17              IN TULSA, OKLAHOMA
     APPEARANCES:
18
          MR. WILL K. WRIGHT, JR., The Drummond Law Firm,
19   1500 South Utica, Suite 400, Tulsa, Oklahoma 74104 appearing on
     behalf of the Plaintiff.
20
          MR. LLOYD W. LANDRETH, Landreth Law Firm, 801 East
21   B Street, Jenks, Oklahoma 74037-4307 appearing on behalf of the
     Defendant Phillips Petroleum Company.
22
23        (Appearances continued on next page.)
24
25   Reported By: Jody Graham, CSR, RPR, RMR, CRR
```

### Page 2

```
 5   Appearances (continued):

 7        MR. RONALD N. RICKETTS, Gable & Gotwals, One
 8   Leadership Square, 15th Floor, 211 North Robinson, Oklahoma City,
 9   OK 73102-7101 appearing on behalf of the Defendants Texaco and
10   Getty.

12        MR. JOHN TUCKER, Rhodes, Hieronymus, Jones, Tucker
13   & Gable, Oneok Plaza, 100 West 9th Street, Suite 400, Tulsa, OK
14   74103-4287 appearing on behalf of the Defendant Sun Oil
15   Company.

17        Also Present: Ms. M. Catherine Hoye, Dr. Blaine T. Reely
```

### Page 3

```
 1              CONTENTS
 2   Direct Examination by Mr. Ricketts......... 4
 3   Direct Examination by Mr. Landreth........ 102
 4   Direct Examination by Mr. Tucker........... 177
 5
 6              EXHIBITS
 7   Defendants' Exhibits 19 through 29 were
 8   marked for identification. (See "exhibit" in word
 9   index.)
10
11            STIPULATIONS
12   It is stipulated that the deposition of
13   JOHN BERTON FISHER, may be taken pursuant to
14   agreement on May 10, 2005, before Jody Graham,
15   CSR, RPR, RMR, CRR.
16   It is stipulated that all objections to
17   questions, except as to the form of the question,
18   may be made at the time of the trial when said
19   deposition is offered into evidence.
20
21            * * * * * *
```

### Page 4

```
 1             JOHN BERTON FISHER,
 2   being first duly sworn, was examined and testified
 3   as follows, to wit:
 4             DIRECT EXAMINATION
 5   BY MR. RICKETTS:
 6        Q  Could you tell us your name, please, sir.
 7        A  John Berton Fisher.
 8        Q  What is your preference, Dr. Fisher or
 9   something else? Dr. Fisher work?
10        A  That works fine.
11        Q  All right. And your age?
12        A  Pardon?
13        Q  Your age?
14        A  Fifty-three.
15        Q  What's your residence address?
16        A  5205 South Joplin Avenue, Tulsa,
17   Oklahoma, 74135.
18        Q  Okay. Dr. Fisher, you understand that
19   you are under oath not only to tell the truth, but
20   the whole truth. You understand that from your
21   depositions and this oath that's been
22   administered; correct?
23        A  Yes.
24        Q  Okay. During the course of the
25   deposition it's important for you to allow me to
```

1 (Pages 1 to 4)



**PROFESSIONAL REPORTERS**
Experience and service that sets the standard

OKLAHOMA CITY —— 405-272-1006
TULSA —— 918-583-8600
FAYETTEVILLE —— 479-587-1006

511 Couch Drive, Suite 100, Oklahoma City, OK 73102 | www.proreporters.com | Phone: 800-376-1006 | Fax: 405-272-0559



Page 81

1    MR. WRIGHT: Underlying Glenpool.
2    MR. RICKETTS: The Glenpool field.
3    MR. WRIGHT: I'm going to object as to
4 foundation.
5    Q   (BY MR. RICKETTS) Let me just start
6 over again. Is there groundwater underlying the
7 Glenpool field?
8    A   Yes.
9    Q   It is not a recognized bedrock aquifer;
10 correct?
11   A   Correct.
12   Q   The Ada-Vamoosa aquifer in Osage County
13 and other counties is a recognized bedrock
14 aquifer.
15   A   The Ada-Vamoosa aquifer in Osage County
16 is a recognized bedrock aquifer.
17   Q   And then you have described for us with
18 respect to the distribution of the sands what you
19 believe to be the difference between the Glenpool
20 and the Vamoosa-Ada aquifer in Osage County; is
21 that correct?
22   A   I believe that would be the primary
23 difference, yes.
24   Q   Okay. Would you — if you could fish out
25 or find Exhibit 23A which is this —

Page 82

1    MR. WRIGHT: That was his, I think.
2    MR. RICKETTS: Well, we had more than
3 one.
4    MR. WRIGHT: Did it go back in the
5 envelope?
6    MR. RICKETTS: I hate to unwrap that
7 whole —
8    MR. WRIGHT: I don't think we kept it.
9    MR. RICKETTS: The court reporter did.
10   Q   (BY MR. RICKETTS) Dr. Fisher, let me
11 ask you in connection with Exhibit 23A, can you
12 locate oil field that's number 835. And let me
13 help you. It's in this — close to Kay County over
14 here.
15   A   Yes.
16   Q   Do you see 835? Is it your opinion that
17 oil field 835 contributes to pollution in the
18 Ada-Vamoosa aquifer?
19   MR. WRIGHT: Object to the form.
20   MR. TUCKER: Which number are you
21 looking at?
22   MR. RICKETTS: Exhibit Numbers 23A.
23   Q   (BY MR. RICKETTS) The oil field is 835.
24   A   And you're asking me is it my opinion
25 whether or not field 835 as indicated on Exhibit

Page 83

1 23A does or can?
2    Q   Does contribute to the contamination of
3 Ada — of the Ada-Vamoosa aquifer.
4    MR. WRIGHT: I'm going to object to
5 form.
6    THE WITNESS: There may be transport
7 pathways whereby it could.
8    Q   (BY MR. RICKETTS) How would you go
9 about, if you can, determining whether or not it
10 actually does contribute to the contamination of
11 the Ada-Vamoosa aquifer?
12   A   I would attempt — I mean, you're calling
13 for me to discuss how about I would prove it.
14   Q   How would you confirm whether or not it
15 did or would — whether or not it has contributed
16 to the contamination, if any, that exists in the
17 Ada-Vamoosa aquifer.
18   MR. WRIGHT: Object to the form.
19   THE WITNESS: I would have to
20 determine the possible pathway or pathways
21 whereby it could; and then determine if I could, in
22 fact, separately trace contamination due to it into
23 that pathway.
24   Q   (BY MR. RICKETTS) And what steps
25 would you take to do that, to make that

Page 84

1 confirmation?
2    A   I would have to look at surface pathways
3 and subsurface pathways whereby it could reach
4 the Ada-Vamoosa.
5    Q   And have you done that in this case?
6    A   No.
7    Q   Have you done that in connection with
8 any of the oil fields in Osage County?
9    A   Okay. Are you saying have I specifically
10 conducted sampling?
11   Q   Or determination of pathways that you
12 described that you would do or could do.
13   A   I've not personally made any direct
14 investigation. I have relied upon reports issued
15 by the United States Geological Survey and others
16 that indicate an association between oil field
17 contaminants and contaminants in the subsurface,
18 in surface waters and in soils.
19   Q   Okay. On page 10 of your original report
20 which is Exhibit 19, you make the statement —
21 it's third paragraph from the bottom. "Defendant
22 Texaco drilled, completed and/or operated at least
23 437 wells in Osage County during the period 1986
24 through 2003." Is that your statement?
25   A   No. My statement is that, "Defendant

21 (Pages 81 to 84)



PROFESSIONAL REPORTERS
Experience and service that sets the standard

OKLAHOMA CITY ———— 405-272-1006
TULSA ———— 918-583-8600
FAYETTEVILLE ———— 479-587-1006

QUARLES v. USA          JOHN BERTON FISHER          May 10, 2005

Page 173

```
 1   environmental and administrative issues.
 2   Deficient surface casing, cementing complaints are
 3   extremely rare."
 4       Q   And now would you read bullet number 4
 5   for me, please.
 6       A   "Most pollution related complaints are
 7   due to discharges, leaks and spills and serious
 8   issues" -- well, rare. I think I would say sic
 9   instead of I.E. -- "that is released to surface or
10   groundwater."
11           And that's, again, within the context of
12   this data which is from 1993 to 1999 and for
13   Division 1. Does not consider in any detail data
14   from Osage County.
15       Q   Dr. Fisher, would you agree with me that
16   production issues as you've phrased them in this
17   document are dominated by trash and debris?
18       A   As I state on the final page under
19   "Conclusions," from reviewing this data which has
20   the temporal and spatial constraints previously
21   described, that's correct.
22       Q   And on the first bullet of the last page of
23   this presentation it states that improper signs are
24   an issue. Do you consider improper signage to be
25   a pollution event?
```

Page 174

```
 1       A   No. It is, however, an event that
 2   prevents you from identifying who the polluter
 3   might be.
 4           MR. LANDRETH: Let's go off the record.
 5           (A recess was taken from 4:18 to 4:21
 6   PM.)
 7       Q   (BY MR. LANDRETH) Dr. Fisher, would
 8   you, please, read on the basis for your opinion,
 9   page 9 as part of your expert report, would you
10   read the last paragraph of page 9 into the record
11   for me, please.
12       A   "Direct evidence of hydrocarbon released
13   from petroleum exploration and production
14   activities is present on property in Osage County,
15   Oklahoma, owned by Quarles."
16       Q   Okay. On what evidence are you basing
17   this statement?
18       A   Direct observation of the presence of
19   hydrocarbons in surface soils.
20       Q   Okay. And I believe it was your earlier
21   testimony that, if you would confirm with me, you
22   did not take any soil samples.
23       A   No.
24       Q   And you did not take any water samples.
25       A   No.
```

Page 175

```
 1       Q   Okay. Do you have plans to take any
 2   samples of soil or water in Osage County
 3   associated with this matter?
 4           MR. WRIGHT: Object as to form.
 5           THE WITNESS: I may collect such
 6   samples.
 7       Q   (BY MR. LANDRETH) Do you currently
 8   have an agreement with the Drummond Law Firm
 9   to conduct any additional sampling in Osage
10   County?
11       A   I have an ongoing engagement with the
12   Drummond Law Firm.
13       Q   Okay. Have they directed you to do any
14   additional sampling in Osage County?
15       A   Not as of this time.
16       Q   Okay. Let's move on to page 10 of
17   Exhibit 1. Excuse me. You're right, Will. Let's
18   move on to page 10 of Exhibit 19, your expert
19   report.
20           And isn't it true that the first five
21   paragraphs of page 10 reflect statements regarding
22   your direct evidence of produced water releases,
23   trash and debris, release of oil field wastes,
24   inadequate secondary containment and similar
25   E&P -- exploration and production issues on the
```

Page 176

```
 1   Quarles property?
 2       A   Yes.
 3       Q   Would it be your testimony that Phillips
 4   Petroleum Company has any responsibility for any
 5   of these alleged conditions?
 6           MR. WRIGHT: Object as to form.
 7           THE WITNESS: In terms of current
 8   observable releases in one -- which one can
 9   observe oil leaving active wellheads, look at or see
10   evidence of historic asphaltic cemented soils or
11   see the evidence of salt contaminated soils
12   through visual observation and taste, we have --
13   we're not able to find surface evidence of the
14   historic Phillips well on Quarles property. So we
15   have no direct evidence from the basis -- from my
16   investigation to this point of any surface releases
17   by Phillips Petroleum.
18       Q   (BY MR. LANDRETH) For the surface
19   releases and related issues that you identify in
20   the first five paragraphs of page 10, are those
21   associated with current operators?
22       A   Current operators would have -- or
23   certainly the operators operating the wells today
24   that would be responsible for releases that are
25   taking place from their facilities today.
```

44 (Pages 173 to 176)



**PROFESSIONAL REPORTERS**
Experience and service that sets the standard

OKLAHOMA CITY ———— 405-272-1006
TULSA ———— 918-583-8600
FAYETTEVILLE ———— 479-587-1006