# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DON QUARLES, an Individual; )
and, QUARLES ACRES, LLC, )
　 )
　Plaintiffs, )
　 )
v. ) Case No. 00-CV-913-CVE-PJC
　 )
UNITED STATES OF AMERICA, ) JURY TRIAL DEMANDED
ex rel. BUREAU OF INDIAN AFFAIRS; )
UNITED STATES OF AMERICA, )
ex rel. ENVIRONMENTAL )
PROTECTION AGENCY; TEXACO, )
INC; PHILLIPS PETROLEUM CO.; )
CONOCOPHILLIPS CO.; SUN OIL )
CO.; LITTLE RIVER ENERGY CO.; )
YARHOLA PROD. CO.; SPESS OIL )
CO., INC.; THE LINK OIL CO.; )
and TONY OIL CO., )
　 )
　Defendants. )

### PLAINTIFF'S OBJECTION TO DEFENDANT'S
### MOTION FOR LEAVE TO TAKE SECOND DEPOSITIONS

Plaintiffs, Don Quarles and Quarles Acres, LLC (jointly referred to as "Quarles"), object to Defendant's Motion for Leave to redepose J. Bert Fisher ("Fisher") and Don Quarles ("Quarles") and in support thereof hereby state:

### BACKGROUND

1. Plaintiffs' expert, Fisher was deposed on May 10, 2005 and May 11, 2005 for greater than twelve (12) hours by the Defendants on subject matter directly related to Plaintiff's real property damage.

2. Plaintiff, Don Quarles, was deposed on February 16, 2005 by the Defendants.



3. On September 28, 2006, Plaintiff's counsel was contacted by Defendants' counsel requesting the depositions of Kerry Sublette, and Pete Anderson, and the re-depositions of Bert Fisher and Don Quarles.

4. Whereas the depositions of Fisher and Quarles have exhaustively concluded and the information sought has already been obtained, Defendants have not evidenced a good reason why Expert Fisher and Plaintiff Quarles should be subjected to a reexamination of the same facts.

5. Pursuant to Rule 26(b)(2), the Court shall limit discovery if it determines that:

> (i) [T]he discovery sought is *unreasonably cumulative or duplicative,* or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had *ample opportunity* by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

FED. R. CIV. P. 26(b)(2). (Emphasis added).

6. "The court rarely grants the opportunity for a second deposition." *Cuthbertson v. Excel Industries, Inc.*, 179 F.R.D. 599, 605 (D. Kan. 1998).

### ARGUMENT AND AUTHORITIES

**A. THE DISCOVERY IS CUMULATIVE AND DUPLICATIVE.**

1. The deposition of Fisher taken by the Defendants on May 10, 2005 and May 11, 2005 was specific, extensive and comprehensive. The Defendants specifically requested Fisher to identify their respective oil and gas company's presence on sites of

2

Quarles property, to identify oilfield wastes from petroleum exploration and production activities related to those sites, and to identify responsibility (liability) for oil field wastes resulting from petroleum exploration and production activities. See Exhibit A. The Defendants seek to make the same inquiry now.

2. The deposition of Quarles taken by the Defendants on February 16, 2005 specifically requested Quarles to identify on his property any oilfield wastes resulting from petroleum exploration and production activities and to identify current and past oil and gas company operators on his property. See Exhibit B. The Defendants seek to make the same inquiry now.

3. "The Court will generally not require a deponent to appear for a second deposition absent some showing of a need or a good reason for doing so." *Cuthbertson v. Excel Industries, Inc.*, 179 F.R.D. 599, 605 (D. Kan. 1998) (citing *Sentry Insurance v. Shiver*, et. al., 164 F.R.D. 255 (D. Kan. 1996)).

4. The attached exhibits evidence that the Defendants have already completed their right to a discovery deposition and a second deposition of Fisher and Quarles would be cumulative, duplicative and totally without merit.

**B.   THE DEFENDANTS HAD AMPLE OPPORTUNITY TO OBTAIN DISCOVERY SOUGHT.**

Defendants assert that Fisher's second expert report submitted on May 30, 2006, (after his deposition) is significantly different from Fisher's first expert report submitted in 2005 (prior to his deposition). Defendants' arguments and rationale are disingenuous and without merit to re-depose Fisher. Fisher's 2005 expert report identified areas on Quarles' property that have been environmentally impacted by Defendants' oil and gas exploration and production operations. Specifically, Fisher's 2005 expert report

3

identified direct evidence of hydrocarbon release from petroleum exploration and production activities on Quarles' properties. (Exhibit C, Excerpt from Bert Fisher's 2005 expert report, p. 9). Additionally, Fisher's 2005 report identified direct evidence of (i) saltwater release from petroleum exploration and production activities, (ii) trash and debris from petroleum exploration and production activities, (iii) the release of oilfield wastes to waters of the United States, (iv) inadequate secondary containment around tank battery facilities and (v) abandoned and unplugged wells on Quarles' property. (Exhibit C, Excerpt from Bert Fisher's 2005 expert report, p. 10). Thus, the Fisher 2005 expert report identified specific areas on Quarles property that have been (and continue to be) environmentally impacted by defendants' oil and gas operations. No additional discovery has been obtained since the submission of the Fisher's first report in 2005. Lastly, Fisher's 2006 expert report speaks for itself.

### C.   THERE IS UNDUE BURDEN AND EXPENSE.

1. Although Fisher resides in Tulsa, the expense of having to redepose him encompasses more than travel time. As an expert, Fisher's time is valuable and his schedule would have to be altered to accommodate the Defendants unsupportable request.

2. Don Quarles is currently residing in Florida and although retired, he would incur travel expense, inconvenience and unnecessary harassment.

3. "Scheduling a second deposition of the same person will generally support a finding of annoyance and undue burden or expense" *Cuthbertson v. Excel Industries, Inc.*, 179 F.R.D. 599, 605 (citing *TBG, Inc. v. Bendis*, unpublished No. 89-2423-EEO (D. Kan. Feb. 17, 1993)).

4.   Defendant's request to re-depose Fisher and Don Quarles is annoying, burdensome, expensive and an attempt to harass the Plaintiff.

## CONCLUSION

For the reasons asserted above, Defendants' leave to take the second deposition of Bert Fisher and Don Quarles should not be granted for it would be unreasonably cumulative, duplicative, burdensome and harassing.

Respectfully Submitted.

/s/   Gentner F. Drummond
Gentner F. Drummond, OBA No. 16645
Donna Marie De Simone, OBA No. 18271
THE DRUMMOND LAW FIRM
1500 South Utica, Suite 400
Tulsa, Oklahoma 74103
(918) 749-7378 – *telephone*
(918) 749-7869 – *facsimile*

## CERTIFICATE OF MAILING

I hereby certify that on this \_\_\_\_ day of October 2006, a true and correct copy of the above and foregoing document, was mailed electronically, to:

Natalia Sorgente
United States Department of Justice
Environmental and Natural Resources Division
P. O. Box 23986
Washington, DC 20026-3986
Natalia.Sorgente@usdoj.gov

Cathryn McClanahan, Esq.
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, OK 74119
cathy.mcclanahan@usdoj.gov
*Attorneys for United States of America*

Ronald N. Ricketts, Esq.
Rebecca J. Sherwood, Esq.
GABLE & GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
rricketts@gablelaw.com
*Attorneys for Texaco, Inc. and Getty Oil. Co.*

Lloyd W. Landreth, Esq.
Landreth Law Firm, PLC
801 East B Street
Jenks, OK 74037-4307
llandreth@landrethlaw.com
*Attorneys for Phillips Petroleum Co.*

John H. Tucker, Esq.
Theresa Noble Hill
Rhodes Hieronymus Jones Tucker & Gable
P. O. Box 21100
Tulsa, OK 74121-1100
jtuckercourts@rhodesokla.com
*Attorneys for Sun Oil Co.*

Lee Ira Levinson, Esq.
Rick D. Westcott, Esq.
Bodenhamer & Levinson
1743 East 71st Street
Tulsa, OK 74136-5108
rickwestcott@hotmail.com
*Attorneys for Little River Energy Co., Inc. and
Yarhola Production Co. and for Spess Oil Co.*

Guy Clark
Northcutt, Clark, Gardner, Hron & Tate
P.O. Drawer 1669
Ponca City, OK 74602-1669
gclark@northcuttlawfirm.com
*Attorney for Link Oil*

P. Scott Hathaway
Melinda Kirk
CONNER & WINTERS, LLP
4000 One Williams Center
Tulsa, OK 74172-0148
shathaway@cwlaw.com
*Attorneys for Tony Oil Co.*

Michael L. Darrah
Durbin, Larimore & Bialick
920 North Harvey
Oklahoma City, OK 73102-2610
Mdarrah@dlb.net
*Attorneys for Tony Oil Co.*

Will K. Wright
Jason Aamodt
Aamodt & Wright, P.C.
401 S. Boston Ave., Suite 1717
Tulsa, Oklahoma 74102
wkw@awlex.com

/s/   Gentner F. Drummond
Gentner F. Drummond

7

# EXHIBIT A

# J. BERTON FISHER TWO-DAY DEPOSITION OF MAY 10-11, 2005

**DIRECT EXAMINATION BY RON RICKETTS, COUNSEL FOR TEXACO:**

Page 99, Lines 5-7 "All right, sir. Can you tell me whether or not any Texaco wells are located on Quarles property east?"

Page 99, Lines 10-12 "Do you have any map that would indicate that there are any Texaco wells or were any Texaco wells on Quarles property east?"

Page 100, Lines 8-10 "Can you tell me if Texaco has ever or currently does operate any wells on Quarles property west?"

**DIRECT EXAMINATION BY LLOYD LANDRETH, COUNSEL FOR PHILLIPS:**

Page 150, Lines 1-6 "Let's go back on real quick here. The – Dr. Fisher, with regard to the figure that you prepared for the [Quarles] eastern property, did you confirm any well locations on that property attributable to Phillips Petroleum Company?"

Page 150, Lines 24-25 and Page 151, Line 1-3 "Dr. Fisher, with regard to the [Quarles] western property did you confirm any of – were any of the well locations that you identified related to operations by Phillips Petroleum Company?"

Page 176, Lines 3-5 "Would it be your testimony that Phillips Petroleum Company has any responsibility for any of these alleged [Quarles] conditions?"

**DIRECT EXAMINATION BY JOHN TUCKER, COUNSEL FOR SUN:**

Page 184, Lines 9-11 "When you identify something as a yellow dot being Sun, how do you identify it as being Sun?"

Page 186, Lines 1-4 "How would I find out what the last completion date you have in your database is for a well with an entity connected to Sun or that you believe connected to Sun?"

Page 187, Lines 16-21 "Can you tell me how may yellow dots there are on that map?
FISHER:     "Well I think the number of yellow dots on the map are reflected in my Exhibit H. Yellow being the – indicating a Sun or a Sun related entity. There should be approximately 590 dots."

Page 191, Lines 14-16, "On the [Quarles] east property I see one yellow M&M in the middle of what's identified as the Quarles property. What is that yellow dot?"

Page 194, Lines 23-25 "Let's look at the [Quarles] west property. Do you have any yellow M&Ms on the west property?"

Page 198, Lines 18-21 "Do you have any evidence of any kind that at any time either of those wells that are identified as yellow M&Ms on your Quarles properties ever caused any pollution?"

**DIRECT EXAMINATION BY RICK WESTCOTT, COUNSEL FOR SPESS, LITTLE RIVER AND YARHOLA:**

Page 283, Lines 7-21 "One second. Dr. Fisher, I want to hand you this map that you've referred to numerous times. It's the Quarles property east with investigation locations. And, again, sir, you may have already discussed this; and if I just missed it, I apologize. The legend lists a few things such as asphaltic soil, flow line problems, scarring. And then over on the map itself, in particular on the Quarles east property, there are colored dots that correspond to this legend that indicate these occurrences on the Quarles east property. Here's my question sir: Did you personally observe these sites and these instances of problems on the Quarles property?"

Page 283, Lines 24-25 and Page 288, Lines 1-6 "I thought I understood that. I just wanted to be sure. And if I understand – I think you covered this with Mr. Tucker yesterday. In the legend you have a few oil or gas companies listed, Chambers, Hendricks, Getty, Phillips, Spess, Sun, Texaco. I think I understood your testimony that that information came from the database that you had referred to; is that correct?"

**FURTHER DIRECT BY LANDRETH:**

Page 298, Lines 14-20 "Dr. Fisher, we discussed earlier – I believe it was yesterday, - the western property of the Quarles ranch. And there was indicated on that property to be a Phillips well. You – I believe you testified you don't have any documentation regarding that location, but you got if from a database; is that correct?"

**FURTHER DIRECT BY RICKETTS:**

Page 301, Lines 1-10 "I do have one. Dr. Fisher, do you remember in Mr. Quarles' deposition he testified that he thought based on some stories some cowboys told him that Texaco had a tank farm on his property. Do you remember that part of his deposition.
FISHER:    Yes

**BY LANDRETH:**

Page 301, Lines 12-13 "Was that part of your inspection sites?
FISHER:    Yes

2

# EXHIBIT B

## DON QUARLES DEPOSITION OF FEBRUARY 16, 2005

DIRECT EXAMINATION BY RON RICKETTS, COUNSEL FOR TEXACO:

Page 58, Lines 7-14 "Okay. I'm going to have marked as Exhibit 10A a legend that might be helpful as we go through these properties. Drawing your attention to Exhibit 10 and in particular Township 23 North, Range 7 East, in Section 34, can you tell me whether or not there are reflected on this exhibit any oil or gas activities in that northeast quarter of Section 34?"

Page 58, Lines 16-18 "Okay. Are there any abandoned wells in the northeast quarter of Section 34 on your property?"

Page 59, Lines 18-19 "All right, sir. Are there any tank batteries on the [northeast quarter of Section 34] property?"

Page 59, Lines 23-24 "All right. Any collection or distribution lines [on the northeast quarter of Section 34]?"

Page 60, Lines 4-6 "Okay. Any oil – oil field trash or debris on your property in the northeast quarter of Section 34?"

Page 60, Lines 9-11 "Is there any surface scarring due to saltwater in the land you own on the northeast quarter of Section 34?"

Pages 60-62 there are seven similar questions as above relating to Quarles property located in the southeast quarter of Section 34.

Pages 60-63 there are eight similar questions as above relating to Quarles property located in the southwest quarter of Section 35.

Pages 67-68 there are two similar questions as above relating to Quarles property located in the southwest half of the southeast quarter of Section 35.

Pages 68-69 there are two similar questions as above relating to Quarles property located in the northeast quarter of Section 35.

Page 64, Lines 4-7 "All right. Let's draw our attention up to the northwest quarter of Section 35, Township 23 North, Range 7 East. And let me first ask you, is that a part of the Cox Ranch?"

Page 64, Lines 9-11 "All right, sir. Can you tell me what the map Exhibit 10 reflects as oil and gas activity on that [northwest quarter of Section 35] property?"

Page 64, Lines 19-23 "Okay. And the – the two dry holes and then the – the – there are two more that are not depicted by the legend. Do you have any actual knowledge of those dry holes being in existence on the property?"

Page 65, Lines 18-21 "Okay. Well, tell me about your actual knowledge, then, of – of problems, pollution problems that you – that you actually know of the northwest quarter of Section 35."

Page 66, Lines 3-4 "Okay. And do you know who – is there a current operator on that [northwest quarter of Section 35] property?"

Pages 69-70 there are three similar questions as above relating to Quarles property located in Section 3, Township 23 North Range 7 East.

Pages 70-73 there are three similar questions as above relating to Quarles property located in the northeast quarter of Section 2, Township 22 North Range 7 East.

Pages 73-74 there are two similar questions as above relating to Quarles property located in the northwest quarter of Section 1, Township 22 North Range 7 East.

Pages 74-75 there are two similar questions as above relating to Quarles property located in the southwest quarter of Section 1, Township 22 North Range 7 East.

Pages 75-77 there are three similar questions as above relating to Quarles property located in the southeast quarter of Section 1, Township 22 North Range 7 East.

Pages 77-78 there are two similar questions as above relating to Quarles property located in the southwest quarter of Section 31, Township 23 North Range 8 East.

Pages 77-78 there are two similar questions as above relating to Quarles property located in the northeast quarter of Section 36, Township 23 North Range 7 East.

Pages 81-83 there are four similar questions as above relating to Quarles property located in the northeast quarter of Section 34 Township 23 North Range 10 East.

Pages 84-87 there are similar questions as above relating to Quarles property located in the northwest quarter of Section 35, Township 23 North Range 10 East.

Pages 87-88 there are similar questions as above relating to Quarles property located in the northeast quarter of Section 35, Township 23 North Range 10 East.

Pages 88-89 there are similar questions as above relating to Quarles property located in the south half of the northeast quarter of Section 35, Township 23 North Range 10 East.
Pages 92-93 there are similar questions as above relating to Quarles property located in the southeast quarter of Section 35, Township 23 North Range 10 East.

Pages 94-95 there are similar questions as above relating to Quarles property located in the northwest quarter of Section 2, Township 22 North Range 10 East.

Pages 95-96 there are similar questions as above relating to Quarles property located in the northeast quarter of Section 2, Township 22 North Range 10 East.

Pages 96-98 there are similar questions as above relating to Quarles property located in the northwest and some of the northeast quarter of Section 11, Township 22 North Range 10 East.

Pages 99-105 there are similar questions as above relating to Quarles property called the Cox ranch in Section 35 and Section 3 and the Points ranch in Section 2 and Section 1.

Pages 106-110 there are similar questions as above relating to Quarles property located where the corners of Sections 1, 2, 11 and 12 come together in Township 22 North, Range 10 East.

**CROSS EXAMINATION BY JASON PITCOCK, COUNSEL FOR SUN:**

Page 186, Lines 8-9 "Has Sun Oil Company or any of its entities ever had operations on the Cox Ranch?"

Page 186, Lines 14-15 "Same question but as to the Big Heart Ranch."

**RE-DIRECT BY RON RICKETTS, COUNSEL FOR TEXACO:**

Page 188, Lines 4-7 "Set that aside for a second for purposes of this question. Other than that tank farm, do you have any knowledge of Texaco operations or Getty operations on your Big Heart Ranch?"

Page 188, Lines 9-10 "Would the same answer be for your Cox Ranch [any knowledge of Texaco operations or Getty operations]?"

# EXHIBIT C

In the matter of

Don Quarles, an Individual
On behalf of himself and all others similarly situated,
Plaintiff
v.
United States of America, ex rel. Bureau of Indian Affairs;
United States of America, ex rel. Environmental Protection Agency;
Texaco Inc.;
Getty Oil Co.;
Phillips Petroleum Company;
Sun Oil Co.;
Little River Energy Co.;
Yarhola Production Co.;
Spess Oil Company, Inc.;
Chambers & Hendrix Oil and Gas, Inc.; and,
John Does 1-1000, Defendant.

Case No. 00-CV-913-E(J)

in the United States District Court
for the Northern District of Oklahoma

Expert Opinions

of

J. Berton Fisher, Ph.D., CPG, RPG (MS#0301)
Lithochimeia, Inc.
222 South Kenosha Avenue
Tulsa, Oklahoma 74120
March 11, 2005

Prepared for

The Drummond Law Firm
1500 South Utica Avenue, Suite 400
Tulsa, OK 74104

1

through 2003, was 207,593,670 BBLs.[12]

Based on a review of data published by the Oklahoma Corporation Commission, total liquid hydrocarbon (crude oil + condensate) in Osage County during the period 1975 through 2003 ranged between 5.07 and 7.49% and averaged 6.03% of the statewide production of total liquid hydrocarbons in Oklahoma.[13]

Based on a review of data published by the Oklahoma Corporation Commission, during the period 1970 through 1974 statewide production of total liquid hydrocarbons in Oklahoma was 1,013,495,000 BBLs.[14]

Fisher and Sublette (in press; publication anticipated 2005)[15] reviewed complaint data available from the Oklahoma Corporation Commission (for all Oklahoma counties other than Osage County) and production data published by the Oklahoma Corporation Commission for the 10-year period 1993 through 2002.
Based on this review, Fisher and Sublette (in press; publication anticipated 2005)[16] determined that, on average, for every barrel of total liquid hydrocarbon (crude oil + condensate) produced in Oklahoma at least 0.00077779 BBLs of oil and 0.00183169 BBLs of saltwater are released to the environment.

Direct evidence of hydrocarbon release from petroleum exploration and production activities is present on property in Osage County, Oklahoma owned by Quarles (see Exhibit "G").

---

12 Oklahoma Corporation Commission. 2004. 2003 Report on Oklahoma Oil and Natural Gas Activity Within the State of Oklahoma. Prepared by: Mr. Larry Claxton, Manager Surety and Statistical Section Technical Department Oil and Gas Conservation Division. Available at http://www.occ.state.ok.us/Divisions/OG/AnnualReports/2004%20OIL%20AND%20GAS%20REPORT.pdf

13 Oklahoma Corporation Commission. 2004. 2003 Report on Oklahoma Oil and Natural Gas Activity Within the State of Oklahoma. Prepared by: Mr. Larry Claxton, Manager Surety and Statistical Section Technical Department Oil and Gas Conservation Division. Available at http://www.occ.state.ok.us/Divisions/OG/AnnualReports/2004%20OIL%20AND%20GAS%20REPORT.pdf

14 Oklahoma Corporation Commission. 2004. 2003 Report on Oklahoma Oil and Natural Gas Activity Within the State of Oklahoma. Prepared by: Mr. Larry Claxton, Manager Surety and Statistical Section Technical Department Oil and Gas Conservation Division. Available at http://www.occ.state.ok.us/Divisions/OG/AnnualReports/2004%20OIL%20AND%20GAS%20REPORT.pdf

15 Fisher, J. B. and Sublette, K. L. in press (publication expected 2005). Environmental Releases from E&P Operations in Oklahoma: Type, Volume, Causes and Prevention. Environmental Geology.

16 Fisher, J. B. and Sublette, K. L. in press (publication expected 2005). Environmental Releases from E&P Operations in Oklahoma: Type, Volume, Causes and Prevention. Environmental Geology.