# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DON QUARLES AND QUARLES ACRES, LLC V.
UNITED STATES OF AMERICA, EX REL. BUREAU OF INDIAN AFFAIRS;
UNITED STATES OF AMERICA, EX REL.
ENVIRONMENTAL PROTECTION AGENCY;
GETTY OIL COMPANY; TEXACO, INC., CHEVRON TEXACO, INC.,
PHILLIPS PETROLEUM COMPANY; CONOCOPHILLIPS CO.;
SUN OIL CO.; LITTLE RIVER ENERGY CO.; YARHOLA PRODUCTION CO.;
SPESS OIL COMPANY, INC.; THE LINK OIL CO.;
CHAMBERS & HENDRIX OIL AND GAS, INC; TONY OIL CO.

Case No.  00-CV-913-E(J)

EXPERT REPORT

OF

LLOYD E. DEUEL, JR.

September 18, 2006



## C.  DISCUSSION OF OPINIONS

1. I was hired by Landreth Law Firm, PLC on behalf of Defendants Conoco-Phillips, Chevron-Texaco, Spess and Tony Oil companies to review Plaintiffs' data and the expert reports of Dr. Bert Fisher dated May 30, 2006, and the expert report of Dr. Kerry Sublette dated May 30, 2006, with an emphasis on their site delineations, proposed remedial action and technical justification.  <u>Neither Dr. Fisher nor Dr. Sublette collected any samples for analysis to substantiate their opinions regarding site specific soil contamination. It is common and expected practice for an expert to either collect or rely on existing, competent soil sample information of a specific area of interest prior to rendering an opinion.  Moreover, none of the U. S. Geological Survey (USGS) reports and data relied on by the Plaintiffs' experts reflect any soil samples taken on the Quarles property.</u>

   Because of this, the Plaintiffs' experts attempted to extrapolate USGS data taken off of the Quarles property to Plaintiff's sites as evidence of salt scars requiring remediation.  With regard to the findings of the USGS reports relied on by the Plaintiffs, it is important to note that there was only one sample point (Osage-Skiatook Petroleum Environmental Research, OSPER site B, S11) where salt contamination in the soil was a significant contamination issue (calculated EC 18.1 mmhos/cm).  The other sample locations do not demonstrate that the soils were impacted by salt.

   One of the most significant findings reported for the OSPER site B was the high levels of salt naturally occurring in the subsurface of the background soil (core A2).  The core was taken in an area mapped as Niotaze-Bigheart-Rock outcrop complex (map unit NBRE).  The highest EC calculated for this core was 7.7 mmhos/cm corresponding to the deepest depth interval sampled (89-93 cm).  This is equivalent to a total dissolved solids (TDS) value of 4,928 mg/liter.  A well constructed at this site would have produced salt water at 19,712 mg/liter TDS.

   **Opinion 1:  There is an entire lack of data to support the opinions of salt contamination on the Quarles property.  The USGS study test data shows naturally occurring salt in the subsurface does not move within the profile and would render drains and capillary barriers recommended by the Plaintiffs' experts both ineffectual and unnecessary.**

   ---

   Plaintiffs' experts have alleged, again without any supporting data, site specific conditions associated with  E&P operations and presented as